# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CA-01387-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY, HERBERT BENNETT AND J. R. WRIGHT*

*v.*

*BERTHA LEE WINTERS, DEMETRIUS HAWKINS, LUCIOUS ROBINSON, INDIVIDUALLY, AND AS FATHER AND NEXT FRIEND OF SHUNTAI ROBINSON, SHERITA ROBINSON AND JUANITA ROBINSON, MINORS, KEVIN MABRY, TIBITHAL O. SELDERS, ALVIN P. HAYMER, DENNIS HAYMER, IRA HAYMER, MILLER HAYMER, ANNETTE HAYMER FORT, LARRY HAYMER, STEPHANIE HAYMER PERKINS, AND ALVIN P. HAYMER, JR.*


| | |
|---|---|
| DATE OF JUDGMENT: | 8/2/1999 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GLENN F. BECKHAM |
| | CHRISTOPHER WAYNE WINTER |
| | EDWARD BLACKMON, JR. |
| ATTORNEYS FOR APPELLEES: | PAT M. BARRETT, JR. |
| | ROBERT GEORGE CLARK, III |
| | ISAAC K. BYRD, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART-04/25/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/16/2002 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. In September of 1994, a train owned by Illinois Central Railroad Company collided with a car in Holmes County, Mississippi, resulting in the death of three persons. The following year, numerous plaintiffs (the heirs) initiated, inter alia, a wrongful death action in the Circuit Court of Holmes County against Illinois Central and its engineer and conductor, Herbert Bennett and J. R. Wright.

¶2. This appeal concerns a contempt judgment and sanctions, including the assessment of attorney's fees

and expenses, entered against Illinois Central for disobeying a court order to produce certain high-level corporate officers (the executives) for depositions. The heirs' underlying action for wrongful death against Illinois Central was tried in September of 2000, and the heirs won a multi-million dollar verdict. That verdict is not a part of this appeal.

¶3. Aggrieved by the contempt judgment and sanctions, Illinois Central appeals,[1] asserting that the circuit court either erred or abused its discretion in the following actions (edited for clarity and brevity):

**I. DENYING MOTION FOR PROTECTIVE ORDER.**

**II. ORDERING THE JULY 12 & 14 DEPOSITIONS TO GO FORWARD.**

**III. ALLOWING DEPOSITIONS FOR PARTIES WHO HAD NOT BEEN SUBPOENAED AND WHO WERE HIGH LEVEL CORPORATE OFFICERS.**

**IV. FINDING ILLINOIS CENTRAL IN CONTEMPT.**

**V. ORDERING EXCESSIVE MONETARY SANCTIONS.**

¶4. We conclude that the circuit court abused its discretion in denying Illinois Central's motion for protective order and ordering the depositions to go forward. But we further conclude that the circuit court did not abuse its discretion in finding Illinois Central in civil contempt. However, because the circuit court erred in awarding expenses in excess of what is permitted under Miss. R. Civ. P. 37, we reverse and remand so the court can reduce the award of fees and expenses to include only that amount which was actually caused by Illinois Central's failure to produce the executives and attend the July 12 and 14 depositions.

## FACTS

¶5. After the heirs' complaint was filed in 1995, the parties proceeded with discovery and other pre-trial proceedings for almost a year. Then in April 1996, the circuit court entered an order staying discovery pending the completion of parallel proceedings in chancery court to determine the identities of the heirs at law and wrongful death beneficiaries. The stay was subsequently lifted in October 1998, and discovery resumed. In March 1999, after a hearing, the circuit court determined the discovery deadline would be July 1, 1999, and could only be extended by permission of the court with a showing of "good cause."

¶6. One week prior to the discovery deadline, on June 23, 1999, the heirs filed a notice to depose six executives on June 29, in Jackson, Mississippi, and seven executives on July 1, in Chicago, Illinois. The heirs also filed a motion to extend the deposition deadline. The heirs claimed that they had discovered the identities of various individuals employed by Illinois Central who had held critical positions with the company at the time of the accident. They claimed they did not discover this information until June 15, 1999, while conducting a Miss. R. Civ. P. 30(b)(6) deposition of one of Illinois Central's employees.

¶7. On June 28, Illinois Central filed a motion for protective order, response in opposition to the heirs' motion to extend discovery, and motion for time to file a complete response and brief. That same day around 5 p.m., via a conference call between the parties and the court, the circuit court extended the discovery deadline to July 21, and told Illinois Central to get any motions that it had to the court before that deadline. Also on June 28, the heirs renoticed twelve of the thirteen previously noticed executives: six of them for Monday, July 12, in Chicago and six of them for Wednesday, July 14, in Jackson. On July 7, the

circuit court, by order, set the hearing on Illinois Central's motion for protective order and motion to reconsider extending discovery, for August 25, 1999 (more than a month *after* the dates noticed by the heirs for depositions in Jackson and Chicago).

¶8. On Friday, July 9, without benefit of the scheduled hearing on the motions, the circuit court denied Illinois Central's motion for protective order and ordered the depositions to go forward as noticed the following week. The next day, Saturday, Illinois Central notified the heirs by fax that their attorneys, "will not be in Chicago on Monday or Jackson on Wednesday, and the Plaintiffs should not incur any expense in making that trip." The heirs did not heed this advice and showed up for both depositions as scheduled. On Monday, July 12, Illinois Central filed a motion for reconsideration of denial of the protective order. Four days later, the heirs filed a motion to compel discovery and for sanctions.

¶9. The trial court heard both Illinois Central's motion for reconsideration, and the heirs' motion to compel and for sanctions, on August 2, 1999. The court found Illinois Central in contempt of court for disobeying the court's July 9th order, and ordered sanctions, including the assessment of attorney's fees and expenses related to the depositions which Illinois did not attend on July 12 and 14. The circuit court also granted the heirs' motion to compel and ordered Illinois Central to pay all costs associated with the rescheduled depositions. These rescheduled depositions were conducted in August and September, at times and places mutually agreed to by the parties.

¶10. On August 9, Illinois Central filed a petition for writ of mandamus with this Court, asking: to stay all proceedings pending Supreme Court review of the contempt appeal; to remove the circuit court judge from the case; and to prohibit the remaining depositions. The circuit court filed a response. Illinois Central then filed a motion to correct the factual inaccuracies contained in the circuit court's response to the petition. This Court denied Illinois Central's petition for mandamus on September 29, 1999.

¶11. The heirs subsequently submitted itemized fee and expense records, for both the scheduled depositions that Illinois Central did not attend and the rescheduled depositions. The total award of fees and expenses assessed against Illinois Central by the circuit court came to over $47,000, plus interest. This award was made directly to the two law firms representing the heirs. The Byrd law firm was awarded $19,398.15, and the Barrett law firm was awarded $28,109.11.

### STANDARD OF REVIEW

¶12. "In regard to matters relating to discovery, the trial court has considerable discretion. The discovery orders of the trial court will not be disturbed unless there has been an abuse of discretion." *Dawkins v. Redd Pest Control, Inc.*, 607 So.2d 1232, 1235 (Miss. 1992).

### DISCUSSION

¶13. Since Illinois Central's first two assignments of error are related, we will discuss them in concert.

### I. DENYING MOTION FOR PROTECTIVE ORDER.

### II. ORDERING THE JULY 12 & 14 DEPOSITIONS TO GO FORWARD.

¶14. Illinois Central contends that there was an egregious abuse of the discovery process, in that the heirs had only deposed two Illinois Central employees in the previous twenty-one months of discovery, prior to

noticing the thirteen executives one week before the discovery deadline. Illinois Central argues that the circuit court abused its discretion in denying its motion for a protective order under Rule 26(d). Illinois Central further argues that the circuit court abused its discretion by ignoring the "voluminous logistics" of preparing for six different depositions on one day in Chicago, then two days later, preparing for six more depositions in Jackson.

¶15. We have on many occasions followed the reasoning of federal courts in interpreting the Federal Rules of Civil Procedure where the rules implicated are identical to our rules, and where this Court has not dealt with the specific issue raised. "It is well known that our Mississippi Rules of Civil Procedure were copied from the Federal Rules of Civil Procedure, and we construe ours as the Federal courts construe the federal rules." *Nichols v. Tubb*, 609 So.2d 377, 383 (Miss. 1992).

¶16. In *Dawkins v. Redd Pest Control, Inc.*, we stated the following with regard to discovery:

> (d) while **the importance of the information must be weighed against the hardships and cost of production and its availability through other means**, it is preferable for the court to impose partial limitations on discovery rather than an outright denial. Any record which indicates a **failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion**, regardless of the fact that the order shows no such abuse on its face.

*Dawkins*, 607 So.2d at 1236 (citing 23 Am.Jur. 2d, *Depositions and Discovery*, § 5 (1983))(emphasis added).

¶17. Pursuant to the Mississippi Rules of Civil Procedure: "A party desiring to take the deposition of any person upon oral examination **shall give reasonable notice** in writing to every other party to the action." Miss. R. Civ. P. 30(b)(1)(emphasis added).[(2)] Unfortunately, the rules fail to give any guidance as to what is reasonable, neither does it appear that this Court has specifically addressed this issue. Fortunately, federal courts interpreting the federal rules have given some insights as to what is, and is not, reasonable notice. In *Hart v. United States*, 772 F.2d 285, 286 (6th Cir. 1985), the Sixth Circuit stated: "The rules do not require any particular number of days, so that reasonableness may depend on the particular circumstances."

¶18. In *C&F Packing Co., v. Doskocil Cos., Inc*, 126 F.R.D. 662, 678 (N.D. Ill. 1989)*,* the district court held that the party seeking deposition failed to give reasonable notice to opposing counsel. In that case, there was a factual dispute as to how much notice the deponent had, but it appeared to be either a couple of days or only a few hours. *Id.* The court held: "Under these circumstances, the only reasonable notice would have consisted of both written notice and oral notice **accompanied by a good faith effort to schedule the deposition at a mutually convenient time**."*Id.* (emphasis added). As another district court has said:

> It is an accepted practice ... for attorneys to make an effort to agree among themselves on the arrangements for the taking of depositions before resorting to the giving of formal notice. This enables them to make arrangements that will suit the convenience of all interested parties. It is a very commendable procedure and one that should be encouraged.

*Warning Lites Co. v. Leggitt*, 32 F.R.D. 431, 433 (W.D. Tex. 1963).

¶19. In *Lloyd v. Cessna Aircraft Co.,* 430 F. Supp. 25, 26 (E.D. Tenn. 1976), a district court in Tennessee quashed depositions for which the defendant had served notice on attorneys in Chattanooga,

Tennessee and Washington, D.C. just before the start of the Memorial Day weekend, even though the depositions were to be taken the following Tuesday in Los Angeles, California. The district court held that giving only two working days notice was patently unreasonable in absence of any special need for haste. *Id.* The court further ordered the parties to engage "in a telephone conference and undertake to agree orally upon a reasonable time for the taking of the depositions heretofore noticed." *Id. See also Federal Aviation Admin. v. Landy*, 705 F.2d 624, 634-35 (2d Cir. 1983)(in which the court approved four days' notice for an out-of-town deposition); *Radio Corp. of America v. Rauland Corp.*, 21 F.R.D. 113, 115 (N.D. Ill. 1957)(in which the court approved written notice one day in advance for a deposition in Oslo, Norway, where both counsel were already in Oslo). *But see Mims v. Central Mfrs. Mut. Ins. Co.*, 178 F.2d 56 (5th Cir. 1949)(holding that where on October 2, the party noticed the taking of 15 depositions on October 6, 1948, and one in New York on October 9, 1948, of witnesses in Boston, Chicago, San Francisco, St. Louis, Alliance, Ohio, Cincinnati, Baltimore, Philadelphia, Birmingham and Dallas, it was not reasonable notice).

¶20. In the case sub judice, the first time the heirs noticed the depositions, they did so with only three business days before the first six depositions would take place, and five business days before the next seven depositions would take place. The second time the heirs noticed the depositions, they did so with only ten business days before the first six depositions would take place, and twelve business days before the second six depositions would take place. However, these ten and twelve business days included the Fourth of July holiday break, so in effect, the notice was more like eight days. When the heirs noticed the depositions on June 23, there is no indication in the record that they first consulted with Illinois Central in order to select dates and places convenient to both parties. In their motion to extend deposition deadline for three weeks, also filed June 23, it states, "it likely would be more convenient for all concerned to re-scheduled them at some **mutually convenient time** within the three-week period immediately following the present deadline of July 1st." (emphasis added) There is no indication in the record that the heirs discussed a "mutually convenient time" with Illinois Central before they renoticed the executives on June 28. However, the heirs clearly offered to do so after they noticed the executives, as this following statement on the fax cover sheet demonstrates:

> Per directions by Judge Lewis, we have re-noticed the subject depositions for July 12 and July 14. Should these dates cause any hardship to you or . . . [Illinois Central's] named employees, please let us know promptly and we will be glad to consider any alternative dates you propose within the framework set by Judge Lewis.

Illinois Central apparently did not respond to the heirs' offer to suggest alternative dates.

¶21. In their response to Illinois Central's motion for protective order, the heirs seem to reveal the real motive for noticing so many depositions, so close together, with such short notice, at the end of the discovery period:

> The central reason for the absolute lather that the Defendants seemingly now find themselves is revealed in the Conclusion to their brief: they aren't being allowed to "engage in preparation time" with their witnesses before the depositions. Plaintiffs would simply remind the Court of what the Court already knows from its own experience: spontaneous, unrehearsed testimony is more likely to contain the real truth than is testimony of the drilled, practiced and parroted variety. Why do any of the railroad's witnesses need to be "prepared"? Why can't they just be placed under oath and asked what

they know about certain subjects before preparation?[(3)]

¶22. We find this discovery tactic employed by the heirs deplorable, not in keeping with the purpose of the discovery rules, and an abuse of the discovery process. As this Court has said: "Rules of discovery are to prevent trial by ambush." *Nichols*, 609 So.2d at 384. What the heirs apparently were attempting to do was in effect, "deposition by ambush," and we condemn this practice.

¶23. In *C&F Packing*, the district court said, "counsel is entitled, when possible, to a date which does not conflict with other obligations and to **an opportunity to prepare for the deposition**. (Indeed, it may have been precisely a desire to prevent such preparation that created C & F's urgency.)" *C&F Packing*, 126 F.R.D. at 679 (emphasis added). It seems that the heirs had a similar desire to prevent such preparation.

¶24. In their motion to extend the deposition deadline, the heirs stated that they had just discovered the identities of various individuals employed by Illinois Central who had held critical positions with the company at the time of the accident. In its motion for protective order and motion to reconsider extension of discovery, Illinois Central demonstrates this assertion by the heirs is either blatantly false or grossly misleading. First, it must be remembered that discovery had already been conducted for a period of over twenty-one months. Second, six of the executives noticed had been listed as persons with discoverable knowledge in Illinois Central's answers to interrogatories, anywhere from eight months to three and one-half years previously. Finally, the remaining six employees are either present or former chief corporate officers of Illinois Central, and their identities, as is true for any corporate officer, are a matter of public record which could have been easily learned at an earlier date through a minor investigation, or written discovery. We agree that the most plausible explanation for the heirs deposing only two Illinois Central employees during twenty-one months of discovery, then attempting to depose twelve or thirteen on the final week, was a discovery tactic intended to not allow Illinois Central the time to properly prepare for the depositions.

¶25. As the previously cited federal cases indicate, in order to facilitate discovery, the court should use its authority to stress the importance of, and encourage, the parties to find mutually convenient times to conduct depositions. It is disputed whether the trial court attempted to get the parties to agree to schedule the depositions at a mutually convenient time prior to ordering the depositions to go forward. In its response to Illinois Central's petition for writ of mandamus, the circuit court stated:

> The Defendants would not discuss an agreed time to extend the discovery deadline or schedule the depositions when Judge Lewis requested the same from the parties in the telephone conversation on June 28, 1999. . . . Judge Lewis' Order of July 9, 1999 was faxed to all parties at about 5:30 p.m. on Friday evening. Judge Lewis did not receive any telephone messages, e-mail or fax concerning the July 9, 1999 order on July 9, 10, 11, or 12[th] advising that Defendants could not physically conduct the depositions and/or requesting additional time to schedule the depositions. Subsequently, two (2) business days after the date in which the Defendants were to appear for depositions the Court received a letter dated July 13, 1999 . . . and a motion to reconsider the July 9, 1999 Order.

¶26. Illinois Central argues that there are two significant inaccuracies in the preceding recitation of facts. First, Illinois Central taped the telephone conference of June 28, and produced a transcript of the conversation for the record. In that transcript there was no indication that Illinois Central was asked by the circuit court to discuss the extension of discovery or the scheduling of the depositions. Second, Illinois Central's motion for reconsideration of the July 9 order was dated July 12, 1999, and stamped by the clerk of the court as filed on July 12, in the p.m, not July 13, as the trial judge had claimed. Incidently, Monday,

July 12, was the first day Illinois Central would have been able to file a motion for reconsideration, since the order was not delivered until 5:30 p.m. on Friday, and of course, the courthouse is closed on the weekend.

¶27. We conclude that under the unique facts and circumstances of this case, notice was not reasonable. In so concluding, we are not saying that notice of eight days is presumptively unreasonable. We could foresee a situation where notice of less than one day, or a few hours, might be reasonable, because of exigent circumstances. We are also not saying that noticing twelve deponents over a three-day period is presumptively unreasonable. However, except under the most exceptional circumstances, and with the agreement of both parties, scheduling six depositions, in a single day is not reasonable.

¶28. We conclude that under the facts of this case, where a party notices six deponents for one day, twice in a three-day period, in cities 700 miles apart, with only eight days' notice, in the last week of a twenty-one month discovery period, apparently with the purpose of catching the opposing party unprepared, then notice is unreasonable.

¶29. As the rules of procedure state: "These rules shall be construed to secure the just, speedy, and inexpensive determination of every action." Miss. R. Civ. P. 1. As the official comment explains:

> There probably is no provision in these rules more important than this mandate: It reflects the spirit in which the rules were conceived and written and in which they should be interpreted. The primary purpose of procedural rules should be to promote the ends of justice; . . .[through] a simplified procedure that minimizes technicalities and places considerable discretion in the trial judge for construing the rules in a manner that will secure their objectives.

Miss. R. Civ. P. 1 cmt.

¶30. As the comment says, the primary purpose of the procedural rules is promote the ends of justice, and the trial judge is given considerable discretion to effect this purpose. We are concerned as to whether justice was promoted by extending discovery for three weeks, in this case, so the heirs could depose twelve high-level Illinois Central executives, even though there was a dubious showing of good cause, and no showing of excusable neglect. Even if we assume, for the sake of argument, that the heirs' failure to notice the depositions of the executives until the last week of discovery was not merely a discovery tactic, it would clearly be a lack of due diligence. The heirs knew or should have known the identity of these individuals at least eight months prior. The heirs proffered "good cause" for extending discovery was, at the least, grossly misleading.

¶31. We are further troubled that, on July 7, the trial court scheduled a hearing for August 25, for the purpose of hearing Illinois Central's motion for protective order and motion to reconsider extending discovery. Then two days later, on July 9, without benefit of the hearing, the judge denied the motions and ordered the depositions to go forward the following week. The court's reasons for ruling on the matter, without the benefit of a hearing, was the court's schedule and the scheduling of the depositions. We are also concerned about the trial court issuing an order at 5:30 p.m. on Friday, after the courthouse is closed, that was not appealable because Illinois Central would be in contempt before the court house reopened on Monday. While we are cognizant of the fact that the trial date of October 4, 1999,[4] was near, it was the heirs who requested an extension of discovery, either as a discovery tactic or from a lack of due diligence. This would seem to warrant that Illinois Central should not be penalized because of the shortness of time, because it was not the source of the time problem.

¶32. Under the circumstances discussed above, we conclude that the trial judge abused her discretion in denying Illinois Central's motion for protective order and ordering the depositions to go forward. However, that does not necessarily relieve Illinois Central of its duty to make a good-faith effort to comply with the order. As this Court has explained:

> The person who disobeys the order of a court of general jurisdiction does so at his peril. It is no answer that the order was improvidently or erroneously granted. Griffith, Mississippi Chancery Practice s 668 (2d ed. 1950). If a party could disobey a decree by a court of general jurisdiction, and defend on the ground that in his opinion the decree was erroneous, appellees would be constitutionally free to ignore all of the procedures of the law and respect for judicial process. Appellees could not bypass orderly judicial review of the injunction by disobeying it.

*Masonite Corp. v. International Woodworkers of America*, 206 So.2d 171, 183 (Miss. 1967). *See also [Maness v. Meyers](#)*, 419 U.S. 449, 458, 95 S.Ct. 584, 591, 42 L.Ed.2d 574 (1975)(holding that orders of courts must be complied with promptly, and absent a stay, party who refuse to obey an order, even if it is ultimately ruled incorrect, risk being held in contempt).

### III. ALLOWING DEPOSITIONS FOR PARTIES WHO HAD NOT BEEN SUBPOENAED AND WHO WERE HIGH LEVEL CORPORATE OFFICERS.

¶33. Illinois Central next argues that the circuit court erred in ordering that the depositions proceed because the executives had not been subpoenaed, and the executives had no actual knowledge about the events surrounding the accident.

#### A. Lack of Subpoena.

¶34. Illinois Central's argument appears to rely on the theory that a subpoena is required for all deponents other than Rule 30(b)(6) deponents. Rule 30(b)(6) allows a party to name a private corporation as the deponent, and in such a case, the corporation must designate one or more officers, directors, or managing agents who are prepared to speak on behalf of the corporation as to specific matters reasonably specified by the deposing party. Miss. R. Civ. P. 30(b)(6).

¶35. Illinois Central correctly points out that, except where the employee has been designated by the corporation under Rule 30(b)(6), an employee is treated as any other witness, and his or her presence must be obtained by subpoena. 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure: Civil 2d* § 2103, at 37 (1994)). However, Illinois Central ignores the next paragraph which notes that a subpoena is not required for a corporate employee who qualifies as an officer, director or managing agent of a party-corporation, even if he has not been designated as the 30(b)(6) deponent. *Id. See also United States v. Afram Lines (USA), Ltd.*, 159 F.R.D. 408, 413 (S.D.N.Y. 1994)(holding that "a corporate employee or agent who does not qualify as an officer, director, or managing agent is not subject to deposition by notice"); *Central States, Southeast & Southwest Areas Pension Fund v. J.W. Cartage Co.*, 1994 WL 416978, *2 (N.D.Ill. 1994)(concluding that: "No subpoena is required for taking the deposition of a corporate party when the opposing party seeks that deposition through officers who will be deposed on the corporation's behalf"); *Plantation-Simon Inc. v. Bahloul*, 596 So.2d 1159, 1162 (Fla. Dist. Ct. App. 1992)(holding that "a party has the right to take a deposition of an officer, director or managing agent of a corporation or partnership or government agency, already named and served as a party, by simple notice and without the necessity of serving the official with

a witness subpoena").

¶36. Thus, the heirs were permitted to depose Illinois Central executives without the necessity of a subpoena, provided those executives fell under the rubric of officers, directors or managing agents of Illinois Central. While the identify of an officer or a director is generally clear, the question of whether a deponent is a managing agent is answered pragmatically on an ad hoc basis, with the federal courts applying the following three-part test:

> (1) Is the individual to be deposed invested by the corporation with general powers to exercise his discretion and judgment in dealing with corporate matters?

> (2) Can the individual be depended upon to carry out the employer's direction to give testimony at the demand of a party engaged in litigation with the employer?

> (3) Can the individual be expected to identify with the interests of the corporation rather than those of the other parties?

8A Wright, Miller & Marcus, *supra,* at 39. *See also* **Founding Church of Scientology of Washington, D.C., Inc. v. Webster**, 802 F.2d 1448, 1452 (D.C. Cir. 1986)(concluding that it is a question of fact as to whether a particular employee may be considered a managing agent of a corporation); **Reed Paper Co. v. Proctor & Gamble Distrib. Co.**, 144 F.R.D. 2, 4 (D.Me. 1992)(citing Wright & Miller); **Terry v. Modern Woodmen of America**, 57 F.R.D. 141, 143 (W.D. Mo. 1972)(applying three-part test); **Tomingas v. Douglas Aircraft Co.**, 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968)(applying three-part test and holding that any doubt as to whether deponent was "managing agent" should be resolved in favor of examining party).

¶37. Illinois Central did not argue before the circuit court that the deponents were not managing agents and does not argue so now. Rather, Illinois Central limits its argument on appeal to whether the deponents could be deposed without subpoena. Thus, this issue is waived and we further find Illinois Central's argument unconvincing. We furthermore adopt the three-part test of Professors Wright, Miller & Marcus, for determining whether a corporate employee is a managing agent.

### B. Lack of Actual Knowledge.

¶38. Illinois Central also argues that the depositions were improper because the deponents had no actual knowledge about the events surrounding the accident at the heart of this case. Illinois Central argues that the purpose of the depositions is strictly harassment, which is not permitted under the rules of discovery.

¶39. The heirs respond that this argument conveniently ignores their two theories of liability against Illinois Central that would warrant the imposition of punitive damages in this case. First, the heirs claim that there were high-level corporate failures concerning vegetation control policies at public grade crossings. Second, there were high-level corporate failures in policies directed towards identification of specific hazards posed by particular crossings and warning the public thereof, as well as notifying relevant authorities, such as the Mississippi Department of Transportation.

¶40. Pursuant to the discovery rules of the Mississippi Rules of Civil Procedure:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues

raised by the claims or defenses of any party. The discovery may include . . . the oral testimony of witnesses. It is not a ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Miss. R. Civ. P. 26(b)(1).

¶41. Under the heirs' two theories for punitive damages, the testimony of the executives is relevant to their claims and appear reasonably calculated to lead to admissible evidence. Thus, the circuit court did not abuse its discretion in concluding that the executives could be deposed.

### IV. FINDING ILLINOIS CENTRAL IN CONTEMPT.

¶42. After Illinois Central failed to produce the executives for the depositions on July 12 and 14, the circuit court held Illinois Central in contempt of court for disobeying the court's July 9th order. The circuit court ordered Illinois Central to pay attorney's fees and expenses related to the depositions which Illinois Central did not attend on July 12 and 14. The circuit court further ordered Illinois Central to pay all costs associated with the rescheduled depositions.

¶43. Pursuant to Rule 37, failure to obey a court order involving discovery is contempt, and the court is authorized to impose sanctions. Rule 37 states in relevant part:

(b) Failure to Comply with Order.

(1) Sanctions by Court. If a deponent fails to be sworn or to answer a question after being directed to do so by the court, the failure may be considered a **contempt of court**.

. . .

(d) Failure of Party to Attend at Own Deposition . . If a party . . . fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just**, . . .the court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees**, **caused by the failure**, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Miss. R. Civ. P. 37 (emphasis added).

¶44. Illinois Central argues that by ordering it to pay not only for the scheduled, but also the rescheduled depositions, the purpose was not merely to reimburse the heirs for the expenses caused by the failure, but also to punish. Thus, the sanctions were punitive in nature, meaning, the circuit court had in effect found Illinois Central in criminal contempt.[(5)]

#### A. Was Illinois Central in Civil or Criminal Contempt?

¶45. In **Premeaux v. Smith**, 569 So.2d 681 (Miss. 1990), this Court discussed the difference between civil and criminal contempt, including the different standard of review as follows:

The factual findings of the chancery court in a civil contempt case are affirmed unless manifest error is

present and apparent. However, . . . a finding of criminal contempt which is punitive in nature, . . . this Court is not bound by the manifest error rule . . . [r]eview proceeds *ab initio* to determine whether on the record the contemnor is guilty of contempt beyond a reasonable doubt.

A citation for criminal contempt is to vindicate the dignity and authority of the court. A citation is proper only when the contemnor has wilfully, deliberately and contumaciously ignored the court.

*Id.*, at 683-84. As this Court has further held:

While a person may be fined or placed in jail for civil contempt, it must be conditioned so that upon his performing the court-required act, he is relieved of the penalty. A civil contempt penalty is coercive, while a criminal contempt penalty is punishment.

*Hinds County Bd. of Sup'rs v. Common Cause of Miss.*, 551 So.2d 107, 120 (Miss. 1989)

¶46. In practice, the distinction between criminal and civil contempt generally turns on two factors. First, a criminal contempt charge typically carries a fixed sentence or fine, while a civil contemnor "carries the keys to his prison in his own pocket" through his ability to comply with the court's orders and end his sentence. *Common Cause of Mississippi v. Smith*, 548 So.2d 412, 415 (Miss. 1989) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442, 31 S.Ct. 492, 55 L.Ed. 797 (1911)).

¶47. Second, in criminal contempt, the court is the aggrieved party, so the fine is paid to the court. In civil contempt, the opposing party is the aggrieved party and the one who is paid. As one federal district court stated:

Monetary fines in civil contempt are payable to the party injured by noncompliance with the court's order and are related to, and ordinarily should not exceed, the injured party's proved losses and litigation expenses, including counsel fees. Fines in criminal contempt are wholly punitive and unrelated in amount to any private damages caused by the contemptuous conduct. Fines in purely criminal contempt, moreover, are not allocable to private litigants, since it is the authority and dignity of the court which is endangered, not private interests. We are aware that in some cases involving criminal contempt proceedings fines have been paid over to the opposing party, or divided between the court and the private litigants. It is plain, however, that in each such instance the criminal contempt conviction was accompanied by a valid civil contempt decree so that allocation of fines to private litigants was based solely on the civil aspect of the dual proceeding. We find no instance in which any court, in exclusively criminal contempt proceedings, has allowed [a] private [party] to share in a fine which is punitive and devoid of remedial purpose.

*Hyde Constr. Co. v. Koehring Co.*, 387 F. Supp. 702, 715-16 (S.D. Miss. 1974)(footnotes omitted), *aff'd as modified in part and rev'd in part on other grounds sub nom. Dunn v. Koehring Co.*, 546 F.2d 1193 (5th Cir.), *clarified on rehearing,* 551 F.2d 73 (5th Cir. 1977).

¶48. In the case sub judice, the circuit court held Illinois Central in contempt of court for disobeying its order that depositions proceed. The circuit court did not say whether it was holding Illinois Central in civil or criminal contempt. However, the penalties assessed by the court against Illinois Central included: an order that the depositions would take place at a later, specified date; an order for Illinois Central to pay the heirs' attorneys' fees; and an order for Illinois Central to pay the heirs' other reasonable expenses in connection with its contemptuous conduct. Because the circuit court contempt order was coercive in nature,

intended to compensate the heirs, and the fees and expenses were to be paid exclusively to the heirs, we conclude that the circuit court found Illinois Central in civil contempt rather than criminal contempt. As such, we will review the finding of contempt for manifest error, rather than ab initio with a beyond a reasonable doubt standard.

### B. Did the Circuit Court commit manifest error in finding Illinois Central in Contempt?

¶49. During the August 2 hearing on the heirs' motion to compel and for sanctions, the circuit court stated:

> The Court finds that there are procedures that you must follow when you disagree with the Court's order and one of those procedures is not just to not show up. This Court will not tolerate such behavior from the defendants. If there - - anytime you disagree with this Court's order, you can file your notices with the Supreme Court to appeal such order, but this Court will not tolerate the defendants making the decision that they will just not show up to participate.

¶50. We agree. Instead of making a good faith effort to comply with the court order it believed was unreasonable and impossible, Illinois Central made no effort at all. Perhaps it was impossible to produce all six executives for deposition in Chicago on July 12, or all six scheduled for July 14 in Jackson, but Illinois Central did not produce even one, nor did it bother to show up itself. While it is true that Illinois Central did notify the heirs that it would not be attending the depositions scheduled on Monday and Wednesday, by fax and phone on Saturday, it made no attempt to notify the trial judge. Neither did Illinois Central attempt to have the depositions rescheduled at a more convenient time, either with the trial judge, or with opposing counsel. Not until Monday afternoon, the day the depositions were to commence at 9 a.m. in Chicago, did Illinois Central file a motion to reconsider the order. Instead of attempting to comply with the order, Illinois Central clung to its arguments that these executives could not be deposed, or that discovery should not be extended, even though the trial court continued to reject these arguments.

¶51. This Court agrees that a trial court can not tolerate a willful defiance of its orders, even if those orders are later found to be an abuse of discretion. In its motion for reconsideration of the July 9 order, Illinois Central stated: "While defense counsel has always endeavored to follow the Orders of all Counts and this Court, counsel's primary duty is to represent his client zealously within the bounds of law under the Rules of Professional Conduct." We agree that a lawyer is to zealously represent his client, but he or she must do so "within the bounds of law," and defying a court order is not within the bounds of the law. We conclude that Illinois Central was in contempt of court for not attempting to obey the July 9 order to proceed with depositions the following week, and the circuit court did not commit manifest error in so determining.

### V. ORDERING EXCESSIVE MONETARY SANCTIONS.

¶52. Finally, Illinois Central argues that the final award of damages was excessive. A plain reading of Rule 37 indicates that Illinois Central is correct. Rule 37 states that the court **shall** require the party to pay the reasonable expenses, including attorney's fees, **caused by the failure**. Miss. R. Civ. P. 37(d). The mandate is mandatory, but it only includes those expenses that are a direct result of the failure, not expenses that the aggrieved party would have incurred even without the failure. The only reasonable expenses caused by the failure in this case were those expended on the first scheduled depositions which Illinois Central did not attend. The rescheduled depositions are expenses that the heirs would have incurred anyway. Further, there is nothing in the record to indicate that Illinois Central did not subsequently comply with future orders and directives of the court, so the coercive effect of the sanctions was realized. Thus, the sanctions should

have been only for the purpose of compensation in order to make the heirs whole again, and Illinois Central should not have been further penalized.

¶53. In ***Batson v. Neal Spelce Assocs, Inc.***, 765 F.2d 511, 516 (5th Cir. 1985), the Fifth Circuit has held the plain language of Rule 37 limits the imposition of expenses and attorney's fees to those caused directly by the other party's failure to comply with the court's orders. In ***Batson***, the court of appeals reversed and remanded the case because the district court assessed attorney's fees for matters unrelated to Batson's failure to comply with a discovery order. The ***Batson*** court also held that an award of attorney's fees in excess of $30,000 over a single discovery violation was unreasonable on its face. ***Batson***, 765 F.2d at 516. *See **Liew v. Breen***, 640 F.2d 1046, 1051 (9th Cir. 1981)(holding that award of attorney fees and costs for opposing attorney's failure to obey order was excessive, since part of fees were not incurred because of failure to obey order); ***Gordon v. New England Tractor Trailer Training Sch.***, 168 F.R.D. 178, 179 (D. Md. 1996)(holding that the party would have had to prepare at least once for the deposition whether or not the other party failed to appear the first time the deposition was scheduled, therefore, the attorney's preparation for the originally scheduled deposition must be subtracted from party's requested attorney fees); ***Dixon v. Margolis***, 765 F. Supp. 454, 456 (N.D. Ill. 1991)(holding that only proper sanction was for additional costs incurred because of discovery violation); ***Lawrence v. Northwestern Nat'l Life Ins. Co.***, 716 F. Supp. 883, (D. Md. 1989)(holding that party could not recover cost of depositions allegedly needed because of a discovery violation, because the depositions would have had to been taken anyway); ***Argo Marine Sys., Inc. v. Camar Corp.***, 102 F.R.D. 280, 285 (S.D.N.Y. 1985) (holding that the Court must make a careful determination of the additional expenses incurred by party as a direct result of discovery violation), *aff'd,* 755 F.2d 1006 (2d Cir. 1985).

¶54. In the case sub judice, the circuit court awarded the heirs just over $47,000, the amount the heirs submitted as expenses, including attorneys' fees, for the scheduled and the rescheduled depositions. In doing so, the circuit court went beyond reimbursing the heirs, it gave the heirs a windfall. If the circuit court wished to find Illinois Central guilty of criminal contempt as well, it should have set a fixed amount, payable to the court, not the heirs. *See **Blake Assocs., Inc. v. Omni Spectra, Inc**.*, 118 F.R.D. 283, 293 (D. Mass. 1988)(holding that the only basis on which a punitive fine may be imposed for violation of discovery orders is criminal contempt; civil contempt is only to insure compliance and inures to the benefit of the other party). We would have then reviewed the contempt order ab initio to determine whether on the record Illinois Central had, beyond a reasonable doubt, wilfully, deliberately and contumaciously ignored the court.

¶55. We conclude the circuit court abused its discretion in awarding fees and expenses for both sets of depositions. We therefore remand this case so that the trial court may determine, on the record, what is the proper amount of expenses that is directly attributable to Illinois Central's failure to attend the first round of depositions - in other words, the expenses incurred because the first scheduled round of depositions did not occur. All expenses that the heirs would reasonably have expected to incur anyway, in the process of deposing the Illinois Central executives, must be excluded.

## CONCLUSION

¶56. Under the unique facts and circumstances of this case, the heirs failed to give reasonable notice for the depositions they scheduled for July 12 and 14. Further, the circuit court abused its discretion in denying Illinois Central's motion for protective order and ordering the depositions to proceed. But the circuit court did not commit manifest error in finding Illinois Central in contempt. However, awarding the heirs the

expenses incurred by the both sets of depositions would be a windfall to the heirs, and punishment to Illinois Central, neither permitted for a finding of civil contempt pursuant to Rule 37. Thus we reverse the award of expenses and remand for the circuit court to reduce the amount of the award to the reasonable expenses, including attorneys' fees, which were actually caused by Illinois Central's failure to attend the July 12 and 14 scheduled depositions. In all other respects, the trial court's judgment is affirmed.

¶57. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PITTMAN, C.J., SMITH, P.J., WALLER AND GRAVES, JJ., CONCUR. CARLSON, J., CONCURS IN RESULT ONLY. McRAE, P.J., DIAZ AND EASLEY, JJ., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**

1. Illinois Central appeals under Miss. Code Ann. § 11-51-11 (Supp. 2001), appeal from judgment of criminal contempt. Section 11-51-12 (Supp. 2001), is entitled, appeal from judgment of civil contempt. The latter section was added to the code in 1991. Whether this is a civil or criminal contempt will be discussed further in Issue IV. Pursuant to these statutes, a person ordered to be punished for either type of contempt, "may appeal to the court to which other cases are appealable from said tribunal." Miss. Code Ann. § 11-51-11 & -12 (Supp. 2001). Thus, an appeal from a contempt order may be had on direct appeal, even though the underlying case is ongoing.

2. The first sentence of the Federal Rule of Civil Procedure 30(b)(1), is identical to Mississippi's version of the rule quoted above.

3. The Byrd law firm's bill, submitted at the request of the circuit court, includes over $4,000, specifically designated as "deposition preparation." In the Barrett law firm's bill, deposition preparation cost is not specifically designated. However, under the general heading of, "Preparation, travel & deposition time," the total is $15,687.50 in attorneys' fees.

4. A mistrial was declared two days after the trial commenced, and the case was rescheduled to be tried in September of 2000.

5. In its reply brief, Illinois Central further argues that the heirs waived their right to respond to this issue by not addressing it in their brief. The heirs quite clearly chose to discuss Issue IV and Issue V together, as Issue V of their brief spends several pages discussing the appropriateness of contempt charges against Illinois Central. Thus, Illinois Central's waiver argument is without merit.