# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01793-SCT

*ILLINOIS CENTRAL RAILROAD COMPANY,*
*HERBERT BENNETT AND J. R. WRIGHT*

*v.*

*BERTHA LEE WINTERS; DEMETRIUS HAWKINS;*
*LUCIOUS ROBINSON, INDIVIDUALLY, AND AS*
*FATHER AND NEXT FRIEND OF SHUNTAI*
*ROBINSON, SHERITA ROBINSON AND JUANITA*
*ROBINSON, MINORS; KEVIN MABRY; TIBITHAL*
*O. SELDERS; ALVIN P. HAYMER; DENNIS*
*HAYMER; IRA HAYMER; MILLER HAYMER;*
*ANNETTE HAYMER FORT; LARRY HAYMER;*
*AND STEPHANIE HAYMER PERKINS*

| | |
|---|---|
| DATE OF JUDGMENT: | 9/17/2002 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | HOLMES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | GLENN F. BECKHAM |
| | CHRISTOPHER W. WINTER |
| | EDWARD BLACKMON, JR. |
| ATTORNEYS FOR APPELLEES: | PAT M. BARRETT |
| | DEREK ARTHUR WYATT |
| | HIAWATHA NORTHINGTON |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/15/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER, P.J., AND GRAVES, J.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This is the second appeal to this Court regarding a discovery dispute in this case. In the first appeal we affirmed the trial court's finding of contempt against Illinois Central Railroad Co. (ICR), but found the amount of attorneys' fees and expenses of over $47,000 excessive, and remanded to the trial court to reassess the amount. *Ill. Cent. R.R. v. Winters*, 815 So. 2d 1168 (Miss. 2002) (*Winters I*). On remand, the trial court assessed approximately $5,900.00 in fees and expenses against ICR. ICR appeals, arguing that the expenses were not actually caused by its failure to attend the scheduled depositions. We affirm the trial court's award.

**FACTS**

¶2. The facts are taken from *Winters I*, 815 So. 2d at 1170-71:

> In September of 1994, a train owned by Illinois Central Railroad Company collided with a car in Holmes County, Mississippi, resulting in the death of three persons. The following year, numerous plaintiffs (the heirs) initiated, inter alia, a wrongful death action in the Circuit Court of Holmes County against Illinois Central and its engineer and conductor, Herbert Bennett and J.R. Wright.
>
> This appeal concerns a contempt judgment and sanctions, including the assessment of attorney's fees and expenses, entered against Illinois Central for disobeying a court order to produce certain high-level corporate officers (the executives) for depositions. The heirs' underlying action for wrongful death against Illinois Central was tried in September of 2000, and the heirs won a multi-million dollar verdict. That verdict is not a part of this appeal.
>
> Aggrieved by the contempt judgment and sanctions, Illinois Central appeals, . . . asserting that the circuit court either erred or abused its discretion in the following actions:
>
> We conclude that the circuit court abused its discretion in denying Illinois Central's motion for protective order and ordering the depositions to go forward. But we further conclude that the circuit court did not abuse its discretion in finding Illinois Central in civil contempt. However, because the circuit court erred in awarding expenses in excess of what is permitted under Miss. R. Civ. P. 37, we reverse and remand so the court can reduce the award of fees and expenses to include only that amount which was actually caused by Illinois Central's failure to produce the executives and attend the July 12 and 14 depositions.
>
> After the heirs' complaint was filed in 1995, the parties proceeded with discovery and other pre-trial proceedings for almost a year. Then in April 1996, the circuit court entered an order staying discovery pending the completion of parallel proceedings in chancery court to determine the identities of the heirs at law and wrongful death

2

beneficiaries. The stay was subsequently lifted in October 1998, and discovery resumed. In March 1999, after a hearing, the circuit court determined the discovery deadline would be July 1, 1999, and could only be extended by permission of the court with a showing of "good cause."

One week prior to the discovery deadline, on June 23, 1999, the heirs filed a notice to depose six executives on June 29, in Jackson, Mississippi, and seven executives on July 1, in Chicago, Illinois. The heirs also filed a motion to extend the deposition deadline. The heirs claimed that they had discovered the identities of various individuals employed by Illinois Central who had held critical positions with the company at the time of the accident. They claimed they did not discover this information until June 15, 1999, while conducting a Miss. R. Civ. P. 30(b)(6) deposition of one of Illinois Central's employees.

On June 28, Illinois Central filed a motion for protective order, response in opposition to the heirs' motion to extend discovery, and motion for time to file a complete response and brief. That same day around 5 p.m., via a conference call between the parties and the court, the circuit court extended the discovery deadline to July 21, and told Illinois Central to get any motions that it had to the court before that deadline. Also on June 28, the heirs renoticed twelve of the thirteen previously noticed executives: six of them for Monday, July 12, in Chicago and six of them for Wednesday, July 14, in Jackson. On July 7, the circuit court, by order, set the hearing on Illinois Central's motion for protective order and motion to reconsider extending discovery, for August 25, 1999 (more than a month after the dates noticed by the heirs for depositions in Jackson and Chicago).

On Friday, July 9, without benefit of the scheduled hearing on the motions, the circuit court denied Illinois Central's motion for protective order and ordered the depositions to go forward as noticed the following week. The next day, Saturday, Illinois Central notified the heirs by fax that their attorneys, "will not be in Chicago on Monday or Jackson on Wednesday, and the Plaintiffs should not incur any expense in making that trip." The heirs did not heed this advice and showed up for both depositions as scheduled. On Monday, July 12, Illinois Central filed a motion for reconsideration of denial of the protective order. Four days later, the heirs filed a motion to compel discovery and for sanctions.

The trial court heard both Illinois Central's motion for reconsideration, and the heirs' motion to compel and for sanctions, on August 2, 1999. The court found Illinois Central in contempt of court for disobeying the court's July 9th order, and ordered sanctions, including the assessment of attorney's fees and expenses related to the depositions which Illinois did not attend on July 12 and 14. The circuit court also granted the heirs' motion to compel and ordered Illinois Central to pay all costs associated with the rescheduled depositions. These rescheduled depositions were conducted in August and September, at times and places mutually agreed to by the parties.

On August 9, Illinois Central filed a petition for writ of mandamus with this Court, asking: to stay all proceedings pending Supreme Court review of the contempt appeal; to remove the circuit court judge from the case; and to prohibit the remaining depositions. The circuit court filed a response. Illinois Central then filed a motion to correct the factual

inaccuracies contained in the circuit court's response to the petition. This Court denied Illinois Central's petition for mandamus on September 29, 1999.

The heirs subsequently submitted itemized fee and expense records, for both the scheduled depositions that Illinois Central did not attend and the rescheduled depositions. The total award of fees and expenses assessed against Illinois Central by the circuit court came to over $47,000, plus interest. This award was made directly to the two law firms representing the heirs. The Byrd law firm was awarded $19,398.15, and the Barrett law firm was awarded $28,109.11.

¶3.     We found that the heirs failed to give reasonable notice for the July 12 and 14 depositions, and the trial court abused its discretion in denying ICR's motion for a protective order and ordering the depositions to proceed.  Nonetheless, we held  the trial court did not commit manifest error in finding ICR in contempt for failure to make any effort to comply.  *Id*. at 1182-83.  We reversed the award of expenses and remanded to the trial court to reduce the amount of the award to the reasonable expenses which were actually caused by ICR's failure to attend the first round of scheduled depositions in Chicago. *Id*. at 1183. On remand, Byrd documented his expenses as $4,378.18  and Barrett documented his expenses as $4,278.81.   The trial court awarded Barrett $3,392.15 of his requested $4,278.81 and Byrd $2,514.18 of his requested $4,378.18, finding that the expenses incurred were a direct result of ICR's failure to attend the depositions.  ICR appeals, arguing that the expenses were not actually caused by its failure to attend the first round of scheduled depositions in Chicago.

## STANDARD OF REVIEW

¶4.     The trial court has considerable discretion in the imposition of sanctions for matters pertaining to discovery, and its orders will not be disturbed in the absence of an abuse of discretion. *Kilpatrick v. Miss. Baptist Med. Ctr.*, 461 So.2d 765, 767 (Miss. 1984).

## DISCUSSION

4

¶5. ICR argues that the costs assessed by the trial court were not directly caused by its failure to attend the scheduled depositions. It contends that the heirs had notice that it would not be able to attend the depositions and that the heirs had a duty to mitigate their expenses.

¶6. It is well established that a party has a duty to mitigate its damages. *See Flight Line, Inc. v. Tanksley*, 608 So.2d 1149, 1162 (Miss. 1992); *Pelican Trucking Co. v. Rosetti*, 251 Miss. 37, 167 So.2d 924, 927 (1964); *Yazoo & M.V.R. Co. v. Fields*, 188 Miss. 725, 195 So. 489, 490 (1940). This duty also applies to discovery sanctions.

> When the sanctions award is based upon attorney's fees and related expenses, an essential part of determining the reasonableness of the award is inquiring into the reasonableness of the claimed fee. Recovery should never exceed those expenses and fees that are reasonably necessary to resist the offending action. . . . In assessing the damage done, the court should consider the extent to which it is self inflicted due to the failure to mitigate.

*Fujimoto v. Au,* 19 P.3d 699, 751 (Haw. 2001).

¶7. ICR states that the heirs purposefully incurred expenses when they traveled to Chicago knowing that ICR would not be there. It contends that the heirs could easily have chosen to schedule a different date for the depositions or waited until Monday and filed a contempt motion but instead chose to incur nearly $6,000 in unnecessary expenses.

¶8. The issue of whether ICR was in contempt was decided in *Winters I*. Here, our discussion is limited to addressing the amount of sanctions, and under the standard of review, the trial court did not abuse its discretion in assessing expenses against ICR. We found in *Winters I* that ICR did not make a good faith effort to comply with the trial court's discovery order. "Instead of making a good faith effort to comply with the court order it believed was unreasonable and impossible, [ICR] made no effort at all." 815 So. 2d at 1181. We directed the trial court to award reasonable expenses which were actually caused

by ICR's failure to attend the scheduled depositions. *Id*. at 1183.  As to what are reasonable expenses, we stated "[t]he only reasonable expenses caused by the failure in this case were those expended on the first scheduled depositions which Illinois Central did not attend.. . . [t]hus, the sanctions should have been only for the purpose of compensation in order to make the heirs whole again, . . . ."*Id*. at 1181-82.

¶9.     We reject ICR's contention that the heirs failed to mitigate their expenses by traveling to Chicago for the depositions after ICR notified them that it would not attend.  The trial court had previously denied ICR's motion for a protective order and directed that the depositions proceed as scheduled.  The heirs acted reasonably in reliance on that order while ICR chose not to comply.

¶10.    The expenses awarded by the trial court on remand were reasonable and well documented.  The expenses incurred consisted of round trip air fare from Jackson to Chicago, cab fare, hotel expense, deposition service fee, and travel time.  We find that the expenses incurred were a direct result of ICR's failure to attend the scheduled depositions.

## CONCLUSION

¶11.    Finding no abuse of discretion by the trial court, we affirm the trial court's judgment.

¶12.    **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., COBB, EASLEY, CARLSON, GRAVES AND DICKINSON, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**