IRVING, J.,
Dissenting.
¶ 24. The majority, finding that the chancery court lacked personal jurisdiction over Shirley Ann Hanshaw, reverses and renders the judgment of the chancery court. Because I believe the majority errs in its finding, on the facts of this case, that a Rule 81 summons was required for the chancery court to acquire jurisdiction over Shirley, I dissent. I find that the court possessed jurisdiction over Shirley when the contempt hearing was held. Therefore, I would affirm the court’s finding of contempt, but reverse and render the $12,000 fine levied against Shirley and remand the case for the chancellor to consider a more reasonable amount of sanctions and to whom those sanctions should properly be paid.
¶ 25. Shirley’s first two assertions of error go to the same issue and will be discussed together. We will not disturb a chancellor’s findings of fact unless the findings are “manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Isom v. Jernigam, 840 So.2d 104, 106(¶ 6) (Miss.2003) (quoting Bell v. Parker, 563 So.2d 594, 596-97 (Miss.1990)). However, we review the court’s findings of law de novo. Id.
¶ 26. The first two issues raised by Shirley turn upon whether she received proper notice of the court’s contempt action. The court’s final judgment was entered on September 3, 2004, and Larry Hanshaw filed a Rule 59 motion for clarification on September 13, 2004. Because Larry’s motion was filed timely, the court retained jurisdiction over the case until it finally ruled on Larry’s motion. The court did not rule on the motion for clarification until October 14, 2004. Therefore, there was no need for the court to issue a summons and notice to Shirley, as the court had continuing jurisdiction over the case.
¶ 27. In reviewing a judgment for contempt, our review of a chancellor’s finding of ultimate fact is limited, and the finding will be upheld where there is substantial evidence consistent with the finding and manifest error has not occurred. Moses v. Moses, 879 So.2d 1036, 1039(1111) (Miss. 2004). Our inquiry is limited to whether a judgment has been violated, a question that necessarily includes a review of whether it was possible to carry out the judgment of the court. Id. See also, Wing v. Wing, 549 So.2d 944, 947 (Miss.1989).
¶ 28. The record does not disclose precisely what evidence and argument was presented to the chancellor at the October 14 hearing where Shirley first requested relief from the contempt finding. The court’s order simply states that, “[hjaving heard argument,” relief was denied. However, at a prior hearing on April 14, 2004, Shirley testified that she had twice been treated for cancer, had been diagnosed with chronic fatigue syndrome, and had been determined to be fully disabled by the Social Security Administration. The court’s prior order dividing the marital estate explicitly referenced the disability: “The plaintiffs ability to work is diminished by her illness; however, she has earned a Ph.D. during that period of illness[,] and the Court feels that she will be able to gain gainful employment at sometime in the future.” It is therefore probable that Shirley raised the issue of her inability to move due to her illness at the hearing.
¶ 29. However, Shirley’s claims of inability are belied by the record, which reveals that she had hired movers to move *176 her at 6:00 a.m. on October 4, but that she cancelled the movers and rescheduled for October 7. Shirley stated by affidavit that she did not begin to feel ill until she left for a doctor’s appointment on October 4. I find it highly unlikely that her doctor’s appointment was scheduled any earlier than 8:00 a.m. Since the movers were scheduled for 6:00 a.m., it appears that Shirley cancelled the scheduled move before she ever began to feel ill. Therefore, I would find that the court did not err in finding Shirley in contempt. However, I would find that the fine was excessive and that it was improper for the chancellor to order that the fine be paid to Larry rather than to the court without first addressing whether Larry suffered any injuries as a result of the contempt.
¶ 30. I note that the settlement sheet appended to the October 14, 2004, order denying relief indicates that the residence had been sold. Larry does not claim that Shirley’s delay resulted in any reduction in the sale price of the house. Moreover, the settlement sheet shows that after debts, attorney’s fees, and other costs, including the $12,000 fine, were paid, Larry was credited with $65,213.21, while Shirley was credited only with $11,633.21. Therefore, regardless of what evidence Shirley produced at the October 14, 2004, hearing, the chancellor knew that Larry had suffered no financial loss in the sale of the marital residence.
¶ 31. It is unclear to me what the chancellor here was attempting to do when he fined Shirley $12,000. Because the fine was intended to compel compliance with the court’s order, the contempt appears to be civil in nature. However, while civil contempt fines are sometimes payable to the opposing party, they “are related to, and ordinarily should not exceed, the injured party’s proved losses and litigation expenses, including counsel fees.” III. Cent. R.R. Co. v. Winters, 815 So.2d 1168, 1180(¶47) (Miss.2002) (overruled on other grounds) (quoting Hyde Constr. Co. v. Koehring Co., 387 F.Supp. 702, 715-16 (S.D.Miss.1974)). From the record, it appears that Larry received the lion’s share of the marital estate. It also appears that Larry’s proceeds from the sale of the house were not affected by Shirley’s tardiness in vacating the residence, as there has been no suggestion that the house sold for less than it would have otherwise sold. While attorney’s fees may be assessed as part of a contempt finding, there is no suggestion here that the court was attempting to order Shirley to pay Larry’s attorney’s fees. In fact, nothing in the record indicates what additional attorney’s fees, if any, Larry incurred as a result of Shirley’s contempt. Therefore, in the absence of any evidence that the $12,000 was even remotely related to any injury suffered by Larry, I would find that the court’s decision to levy such a large fine and then make that fine payable to Larry was in error.
¶ 32. I would reach the same result if we view Shirley’s contempt as criminal. There are two forms of criminal contempt — direct and indirect. Direct contempt occurs in the presence of the court, while indirect contempt occurs outside the presence of the court. Mingo v. State, 944 So.2d 18, 32(¶ 50) (Miss.2006). Shirley’s contemptuous actions would necessarily be indirect, because her refusal to vacate occurred outside the presence of the court. However, a person accused of indirect criminal contempt “must be provided with procedural due process safeguards, including a specification of charges, notice, and a hearing.” In re Smith, 926 So.2d 878, 888(¶ 14) (Miss.2006) (quoting In re Williamson, 838 So.2d 226, 237(¶ 31) (Miss.2002)). Those safeguards include the right to have “a different judge ... hear the contempt proceedings.” Id. Clearly, Shirley was not afforded the safeguards that would accompany a charge of criminal con *177 tempt. Additionally, criminal contempt charges are only payable to the court, not to an opposing party. Winters, 815 So.2d at 1180(¶ 47).
¶ 33. Therefore, I would find that whether Shirley’s contempt was civil or criminal, it was improper for her to pay the sum of $12,000 to Larry in the absence of any proof regarding any injury to Larry as a result of Shirley’s contempt. In addition, $12,000 was an excessive fine to levy against Shirley, regardless of to whom the fine was payable. The sanctions levied against a party must be reasonable. Twelve thousand dollars for a twenty-four delay is clearly excessive and was an abuse of the chancellor’s discretion. Although Shirley’s contempt did not constitute direct criminal contempt, we note that Mississippi Code Annotated section 9-1-17 (Rev. 2002) limits the fines for direct criminal contempt to $100 per offense. Even had each hour that Shirley tardied been considered a separate offense, her fine would have been limited to $2,400 dollars rather than $12,000.
¶ 34. For the reasons above, I would affirm the court’s finding of contempt, although I would reverse and render the $12,000 fine levied against Shirley. However, I would remand the case to the court to consider a more reasonable amount of sanctions and to whom those sanctions should properly be paid. If the court still chooses to make Shirley’s fine payable to Larry, I believe such a finding should necessarily entail a study of Larry’s injuries, if any, as a result of the contempt. If the purpose of the fine is to punish Shirley on the court’s behalf, the court should reassess a reasonable amount for the fine, as, in my judgment, $500 per hour is clearly excessive.