# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-02488-SCT

*JOHN BECK, JR. AND KIM BECK*

*v.*

*MARIO SAPET, JR. d/b/a SAPET DESIGN &*
*CONSTRUCTION*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/10/2004 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JAMES (JAY) R. FOSTER |
| ATTORNEYS FOR APPELLEE: | RICHARD EUGENE CASSADY |
| | W. EDWARD HATTEN, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 09/14/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     John Beck, Jr. and wife Kim Beck filed a complaint in the Harrison County Circuit Court, Second Judicial District, against Mario Sapet, Jr. d/b/a Sapet Design and Construction, citing numerous claims arising out of a contract whereby Sapet was to construct their new home. The Becks sought $300,000 in actual damages, $100,000 in punitive damages, and $75,000 in attorney fees.  Sapet timely responded with his answer and defenses and applied for

an order to proceed with mediation pursuant to the terms of the contract and a stay of proceedings while the matter was submitted to mediation.

¶2.     The trial court ultimately granted Sapet's Motion to Dismiss with Prejudice on November 3, 2004, on the basis of the Becks' repeated failure to timely provide full and complete supplemental responses to written discovery requests.    The last failure, which triggered the dismissal, was the Becks's failure to comply with the court's October 19, 2004, order to supplement discovery within 10 days of the court's order.

¶3.     The Becks' Motion for Reconsideration and for Relief from Judgment was denied on December 10, 2004, and they timely appealed, stating the following issues:    (1) they provided every document related to this case, and (2) they properly answered the interrogatories.

¶4.     After due consideration, we affirm the judgment of the trial court.

### FACTS

¶5.     On September 1, 1999, the Becks entered into a written construction contract with Sapet for the construction of a large new home, at a cost of more than $1 million.    Because the work was not completed within the stated time of "approximately 12 months", and in the manner which the Becks expected under the terms of the contract, they filed a complaint against Sapet, on April 1, 2003, for breach of the construction contract, conversion of funds, detrimental reliance, negligence in the construction, gross negligence, breach of actual and implied warranty of fitness and for an accounting.    The following is an abbreviated time line of the pertinent events in the trial court:

04/01/2003     Complaint filed.

06/06/2003    Sapet filed his answer and defenses.

06/10/2003    Sapet filed notice of discovery to the court that interrogatories and requests for productions of documents had been propounded to the Becks.

08/29/2003    The Becks filed an unopposed motion to extend time for discovery and hold the case in inactive status because John Beck was to undergo heart surgery.

11/14/2003    Letter from Sapet's counsel to the Becks' original attorney, inquiring as to the status of John Beck's health and his availability for deposition, and noting the need to get the Becks' written responses to the outstanding discovery.

12/19/2003    Similar letter pointing out that no response was received to the earlier letter and asking counsel for a response as soon as possible.

01/09/2004    A third similar letter noting no response to past two letters and saying would like to hear something as soon as possible.

01/26/2004    Sapet files his first motion to compel, stating "recent inquiries into the status of [plaintiff's] health and ability to proceed with discovery and litigation of this lawsuit that they filed have gone unanswered."

05/03/2004    The Becks' original counsel filed a Motion to Substitute Counsel, requesting the court to allow Jay Foster to replace him as counsel for the Becks. Neither of the Becks' counsel responded to the motion to compel, nor did Foster, as the new attorney, request additional time to acclimate himself to the case or to answer the discovery.

05/17/2004    Trial court grants Sapet's January 26, 2004, motion to compel discovery. This order stated the Becks must provide complete responses to discovery within 15 days or face sanctions.

05/19/2004    Order entered allowing substitution of counsel for the Becks and naming Foster. Still no request was made by Foster for additional time to complete responses to discovery.

06/01/2004    Deadline for complete responses to discovery passes without response.

06/09/2004    Sapet's counsel writes Foster to advise that responses are now overdue and a Motion to Dismiss will be filed if responses are not filed by June 14, together with potential dates for the Becks to be deposed.

06/11/2004    Foster faxed the Becks' unsigned draft responses to discovery, but did not follow up with final, signed responses or request additional time to do so.

06/14/2004    Sapet's counsel writes to Foster thanking him for the draft discovery responses and requesting that, when they are completed and signed, Foster needs to have: supplemented Interrogatory 3; had a copy made of the audio and video tapes identified in Interrogatory 4 (Sapet to pay cost); copied other audio and video tapes, if any, which are referenced in interrogatories 5, 6, and 7; supplement No. 12 (Sapet to pay cost); and supplemented No. 13 to indicate what is contended in the "approximately $250,000" in damages. Further Sapet's attorney asked when he could come and inspect and copy the documents referenced in nos. 14, 18, 19, and 21 of the Request for Production. Finally he reminded Foster that

3

the answer to Nos. 15 and 16, saying "previously provided" was incorrect, as he had received nothing in response.

06/30/2004     Still not having received the requested completed and signed responses nor the other productions, Sapet filed a motion to dismiss, or alternatively for sanctions, because timely and proper response from the Becks to the May 17 order had not been received. At this point, more than one year had passed since the Interrogatories and Requests for Production were first served on the Becks.

07/02/2004     The Becks responded to Sapet's discovery requests. A number of the answers simply said "The Plaintiff has boxes of documents that are available for copying at the office of Jay Foster."

10/07/2004     Sapet files his second motion to compel and for sanctions, arguing that the Becks' responses to Sapet's interrogatories and requests for documents were still incomplete.

10/19/2004     Trial court once again grants Sapet's motion to compel, requiring the Becks to supplement their responses to Sapet's requests for interrogatories numbers 2, 3, 4, 12, and 13, as well as Sapet's request for documents numbers 3, 4, 5, 6, 7, and 10, to be signed by the Becks "under oath, and delivered to [Sapet's] counsel within 10 days of the entry of this Order, failing which the case will be dismissed with prejudice without further notice."

10/20/2004     Sapet's counsel sends Foster a four page URCCC 4.04 good faith letter, very specifically stating each response which was considered incomplete and why, and stating that they "really would rather resolve this matter without having to file another Motion to Compel."

10/24/2004     Foster responds with terse letter, defending his actions as to each response.

10/29/2004     Becks do not provide any supplements, but rather, on the 10th day, filed a motion to reconsider with the trial court.

11/03/2004     After a hearing on the motion to reconsider, the trial court entered its final judgment dismissing the case with prejudice because the Becks did not comply with the October 19, 2004, order compelling discovery. However, the trial court did not rule on the motion to reconsider.

12/01/2004     Becks filed a motion for relief from judgment with the trial court.

12/10/2004     Trial court denied the Becks' motion to reconsider and motion for relief from judgment.

## DISCUSSION

¶6.     The sole issue raised on appeal is whether the trial court erred in dismissing the case with prejudice. The standard of review this Court applies to a trial court's dismissal of an

action with prejudice as a result of a discovery violation is abuse of discretion. ***Salts v. Gulf Nat'l Life Ins. Co.,*** 872 So. 2d 667, 670 (Miss. 2004). Trial courts have considerable discretion in discovery matters, and their decisions will not be overturned unless there is an abuse of discretion. ***Robert v. Colson***, 729 So. 2d 1243, 1245 (Miss. 1999). Further, this Court looks to the following factors to determine if a dismissal with prejudice is the proper remedy for discovery violations: (1) whether the discovery violation resulted from willfulness or an inability to comply; (2) whether the deterrent value of Rule 37 could not have been achieved through lesser sanctions; (3) whether the other party's trial preparation has been prejudiced; (4) whether the failure to comply is attributable to the party itself, or their attorney; and (5) whether the failure to comply was a consequence of simple confusion or a misunderstanding of the trial court's order. ***Pierce v. Heritage Props. Inc.,*** 688 So. 2d 1385, 1389 (Miss. 1997). This Court only reverses if it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors. ***Caracci v. Int'l Paper Co.,*** 699 So. 2d 546, 556 (Miss. 1997).

¶7. This Court has stated "failure to make or cooperate in discovery should first be resolved by making a motion in the proper court requesting an order compelling such discovery." ***Robert***, 729 So. 2d at 1247 (citing M.R.C.P. 37(a)(2)). If the party fails to comply with this first order to compel, the trial judge may then sanction that party in accordance with M.R.C.P. 37(b), which includes dismissing the case with prejudice. ***Id.*** We have also held that:

> dismissal is to be used as a sanction only as a last resort. "Lower courts should be cautious in either dismissing a suit or pleadings or refusing to permit

5

testimony . . . . The reason for this is obvious. Courts are courts of justice not of form. The parties should not be penalized for any procedural failure that may be handled without doing violence to court procedures."

*Id.* (quoting **Clark v. Miss. Power Co.,** 372 So. 2d 1077, 1080 (Miss. 1979)).

¶8.     In the present case, the trial court entered its first order to compel on May 17, 2004, because the Becks had not yet responded to any of the discovery requests (interrogatories and requests for documents) propounded to them by Sapet almost a year earlier, on June 9, 2003.[1] This order was violated because the Becks did not answer Sapet's discovery requests until July 2, 2004, well outside of the 15 days required by that order. The Becks then violated the trial court's second order to compel entered on October 19, 2004, which gave them 10 days to supplement their discovery responses.

¶9.     The Becks' attorney claims he did not attend the hearing that resulted in the court's October 19, 2004, order to supplement discovery because he did not receive notice. However, Sapet's attorney told the judge at the December 6, 2004, hearing on the Motion to Reconsider that he sent notice to the Becks' attorney and also referenced the hearing in a subsequent letter he sent to their attorney, and this was not disputed.[2]

¶10.    Although the Becks filed a motion to reconsider on the tenth day after the order was entered, they failed to obtain a ruling on it and failed to supplement discovery within the time

---

[1]The responses were due within 30 days of service, M.R.C.P. 33(b)(3) & 34(b), and all discovery should have been completed within ninety days from service of Sapet's answer, URCCC 4.04(A).

[2]The trial court docket reflects that the notice of the hearing was filed on October 6, 2004.

6

period specified in the order. The only reasons given for waiting until the tenth day to file was that the judge was unavailable and that an agreement had been reached with Sapet's attorney regarding when the Becks would supplement discovery. In response to this argument the trial court stated:

> there was an attempt to ex parte notify the court by way of a faxed letter. If I'm not mistaken, however, by the time the Court received that fax, the order had already been entered, because I was in Jackson County at the time that the order was entered because I started a trial over there on November the 1st, as I recall, that took all week to try.
> So in any event, notice was fairly given that dismissal would be had if it had not been responded to within the ten days of the order, that order having been entered more than ten days prior to the submission of the order of dismissal to the Court on October the 29th, I believe it was. The motion to set aside the order is overruled.

¶11. This Court has adhered to the rule that filing a motion is not a release from a trial court's order unless the motion is heard and a decision is made. *Salts,* 872 So. 2d at 672.

¶12. Even if the judge was busy, some effort should have been made to supplement discovery and deliver the responses to Sapet's counsel within ten days or to document the alleged agreement to the contrary. Objections to specific items or information requested by Sapet then could have been subsequently raised with the trial judge, which is obviously safer and more appropriate than totally violating the trial court's order, even if an undisputed agreement has been reached.

> Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere

7

to the provisions of these orders, they should be prepared to do so at their own peril.

*Bowie v. Montfort Jones Mem'l Hosp.,* 861 So. 2d 1037, 1042 (Miss. 2003) (citations omitted).

¶13.    The present case provides an excellent example of the proper way to document the efforts made to obtain and provide adequate discovery responses.    The record establishes a pattern of consistent follow-up regarding pending requests and a clear paper trail upon which the trial court and the appellate court can rely when considering the factors set forth in *Pierce*, as follows:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Pierce*, 688 So. 2d at 1389.    The record clearly contains indications of the tone and substance important to determine wilfulness, or inability to comply.    Further, it provides insight for determination of whether the failure to comply is attributable to the party, or the attorney, and whether the failure to comply was a consequence of simple confusion or a misunderstanding of the court's order.    Inclusion of an analysis of all the *Pierce* factors in the trial court's order would have been helpful to this Court and is preferred, but not required.

¶14.    We see nothing in the present case which demonstrates that the trial court abused its discretion and that the dismissal was unwarranted.   Although the result may be harsh for the Becks, the record before us simply does not  provide sufficient reasons for this Court to find the trial court abused its discretion by granting the dismissal.

## CONCLUSION

¶15.    We afford great deference to a trial court's discretion in resolving discovery disputes. We find no abuse of discretion in the trial court's dismissal of this case.   Therefore, we affirm the trial court's judgment.

¶16.    **AFFIRMED.**

**WALLER, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH,  JJ., CONCUR.  EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, C.J.  DIAZ, J., NOT PARTICIPATING.**

**EASLEY, JUSTICE, DISSENTING:**

¶17.    I must respectfully dissent from the majority's affirmance of the trial judge's judgment dismissing the Becks' case with prejudice.  On this record, the trial judge abused his discretion and should have imposed an alternate form of sanction in place of the dismissal of the case with prejudice.  Such a harsh sanction to the Becks is not warranted in this case, and other alternative measures to dismissal of the Becks' case  with prejudice were not first considered by the trial judge.  The record does not indicate that the trial judge even considered alternative sanctions such as imposing fines and sanctions against the Becks' attorney, James (Jay) R.

9

Foster, where the Becks were blameless in their attorney's alleged failure to provide discovery. Therefore, I must respectfully dissent.

¶18.    In ***Bowie v. Montfort Jones Mem'l Hosp.,*** 861 So. 2d 1037, 1042 (Miss. 2003), we held:

> Our trial judges are afforded considerable discretion in managing the pre-trial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases. Our trial judges also have a right to expect compliance with their orders, and when parties and/or attorneys fail to adhere to the provisions of these orders, they should be prepared to do so at their own peril.

However, dismissal with prejudice is a drastic and harsh punishment that should be reserved for the most extreme and egregious situations, usually where clear delay and lesser sanctions are present. *See* M.R.C.P. 41(b) cmt.; *see also* ***Peoples Bank v. D'Lo Royalties, Inc***., 206 So. 2d 836, 837 (Miss. 1968); ***Vosbein v. Bellias,*** 866 So. 2d 489, 493 (Miss. Ct. App. 2004). "[D]ismissal for failure to comply with an order of the district court is appropriate only where there is a clear record of delay or contumacious conduct and lesser sanctions would not serve the best interests of justice." ***Wallace v. Jones***, 572 So. 2d 371, 376 (Miss. 1990) (citing ***McGowan v. Faulkner Concrete Pipe***, 659 F. 2d 554, 558 (5th Cir. 1981); ***Trakas v. Quality Brands***, ***Inc***., 245 U.S. App. D.C. 165, 759 F.2d 185, 187 (D.C. Cir. 1985)).

¶19.    On May 17, 2004, the trial court entered its first order to compel  because the Becks had not yet responded at all to the discovery requests propounded to them by Sapet.  The Becks' attorney did not answer Sapet's discovery requests within the fifteen day time period

stipulated in the order. The trial judge entered a second order to compel on October 19, 2004, providing the Becks ten days to supplement their allegedly inadequate discovery responses after conducting a hearing on the same day.

¶20. The Becks' attorney contends that he did not attend the hearing that resulted in the order to supplement discovery since he failed to receive notice of the hearing. Sapet's attorney maintains that he sent notice of the hearing to the Becks' attorney.

¶21. The Becks' attorney filed a motion to reconsider the order entered on October 19, 2004, ten days after the order was entered. The Becks' attorney asserts that he waited ten days to file because the trial judge was unavailable and the parties had reached an agreement regarding when the Becks would supplement discovery. The trial judge acknowledged that the Becks' attorney had tried to contact him regarding the order and overruled the motion to set aside the order, stating:

> [T]here was an attempt to ex parte notify the court by way of a faxed letter. If I'm not mistaken, however, by the time the Court received that fax, the order had already been entered, because I was in Jackson County at the time that the order was entered because I started a trial over there on November the 1st, as I recall, that took all week to try.

> So in any event, notice was fairly given that dismissal would be had if it had not been responded to within the ten days of the order, that order having been entered more than ten days prior to the submission of the order of dismissal to the Court on October the 29th, I believe it was. The motion to set aside the order is overruled.

¶22. It is well settled that the filing of a motion does not release one from a trial court's order unless the motion is heard and a decision is rendered by the court. *See **Salts v. Gulf***

11

*Nat'l Life Ins. Co.,* 872 So. 2d 667, 672 (Miss. 2004). Likewise, the whole discovery process in this case certainly leaves something to be desired. Without question, the Becks' attorney failed to comply with the discovery order and failed to obtain an extension of time or have the motion to reconsider heard or set before the ten days expired. However, dismissal with prejudice of the Becks' case as the sanction does not fit the infraction as it was the actions of the Becks' attorney and not that of the Becks themselves. Consequently, the trial judge did abuse his discretion in dismissing the case with prejudice.

¶23. Here, several facts weigh in favor of finding the dismissal with prejudice to be disproportionately harsh for the discovery violations in this case. The record is unclear as why the Becks' responses to the requests for documents were inadequate and the Becks' responses to interrogatories were insufficient. The Becks' attorney argues that there was no wilful refusal to comply with the discovery requests.

¶24. The Becks' attorney contends that the audio and video tapes had already been furnished to Sapet's attorney months before October 19, 2004. The tapes had been picked up by Sapet's attorney from the company that had made the copies for the Becks. The record excerpts contain a letter dated August 26, 2004, from the Becks' attorney's paralegal to Sapet's attorney supplementing the video tape requested in the request for documents.

¶25. The written documents were delivered to a printing company for copying. On August 3, 2004, the Becks' attorney's paralegal faxed a letter to Sapet's attorney that the documents

had been copied and were ready to be picked up at the print shop. Sapet's attorney picked up the documents prior to October 19, 2004.

¶26. As to the interrogatories, the Becks' attorney contends that the requests were answered to the best of their ability. He further provides that interrogatory request number two requesting information as to all persons that had knowledge of the allegations was satisfied by providing a list of twenty-seven names. According to the Becks' attorney, the Becks were unaware of the name of every contractor or subcontractor that had been hired by Sapet to work on the home. Further, the Becks' attorney argues that interrogatory request number three regarding expert witnesses was also satisfied because the response provided that the Becks may call the witnesses listed in response to interrogatory number two as expert witnesses. Likewise, the response to the requests for documents number one and two provided that no decision regarding who would be called as an expert had been reached at that time.

¶27. The Becks' attorney states that approximately 1,838 pages of documents were provided to Sapet months before the October 19, 2004, order was entered. Likewise, at the hearing on the motion to reconsider, the Becks' attorney informed the trial judge that on October 8, 2004, he had faxed Sapet's attorney advising him that everything requested in discovery had already been provided, and the Becks had nothing left to produce. However, he received no response from the fax. On October 12, 2004, the Becks' attorney again faxed Sapet's attorney that everything had been supplied except as to interrogatory number twelve regarding a witness,

Rich Cassidy, which was supplemented by the faxed letter. Again, the Becks' attorney received no response.

¶28. After not receiving any response, the Becks' attorney telephoned Sapet's attorney. According to the Becks' attorney, an agreement was reached with Sapet's attorney regarding the discovery requested. He subsequently confirmed the conversation with Sapet's attorney regarding the discovery by fax.

¶29. The Becks' attorney did not attend the October 19, 2004, hearing which resulted in the trial judge entering the order to compel. According to the Becks' attorney, he did not receive notice of the hearing, and he was in court in Gulfport, Mississippi, at the time of the hearing which took place in Biloxi, Mississippi. Therefore, the trial judge only heard arguments from Sapet's attorney on this issue.

¶30. As previously discussed, the Becks' attorney filed a motion for reconsideration on the tenth day. According to the Becks' attorney, he did not file the motion for reconsideration before the tenth day because the trial judge was out of town presiding over another case and unavailable to hear the reconsideration, and Sapet's attorney was likewise unavailable until then.

¶31. Nothing in the record suggests that the Becks *themselves* did anything to willfully violate the court's orders or to prolong the case unnecessarily. On the contrary, John Beck underwent heart surgery and was unable to participate in this litigation for some time.

According to the Becks' attorney, he had already provided everything to Sapet's attorney that he had to give in discovery.

¶32.    The trial judge's judgment to dismiss with prejudice was the ***first sanction*** the trial judge imposed against the Becks.    The Becks' attorney at the hearing on the motion to reconsider stated:

> You signed the motion to dismiss obviously thinking that, you know, [the Becks' attorney] is not answering discovery . . . As I stand before you today, I do not have anything left to give them, and I haven't had anything left to give them for some number of months now.  So I do not understand, especially in light of the fact that [Sapet's attorney] and I got on the phone and agreed as to what I was going to do.  I did exactly what he asked me to do, and then he turns and sends Your Honor an order dismissing the case.

¶33.    Further, a review of our legal precedent supports reversal of the trial judge's judgment as an abuse of discretion.  In ***Pierce v. Heritage Props., Inc***, 688 So. 2d 1385, 1387 (Miss. 1997)*,* this Court affirmed the trial court's imposition of dismissal as a discovery sanction under Rule 37(b)(2) & (e) and the court's inherent power to protect the integrity of the judicial process where the plaintiff willfully concealed the fact that another person was present when she was injured.    The plaintiff in ***Pierce*** submitted false responses to various discovery requests and false deposition testimony.  *Id.* at 1390.  Pierce admitted her misconduct only after she discovered the defendant uncovered the truth. *Id.*

¶34.    This Court in ***Pierce*** provided guidance in evaluating the appropriateness of dismissal of an action as a sanction:

> First, dismissal is authorized only when the failure to comply with the court's order results from wilfulness or bad faith, and not from the inability to comply. Dismissal is proper only in situations where the deterrent value of Rule 37 cannot be substantially achieved by the use of less drastic sanctions. Another consideration is whether the other party's preparation for trial was substantially prejudiced. Finally, dismissal may be inappropriate when neglect is plainly attributable to an attorney rather than a blameless client, or when a party's simple negligence is grounded in confusion or sincere misunderstanding of the court's orders.

*Pierce*, 688 So. 2d at 1389. Here, nothing in the record demonstrates that the Becks themselves contributed to the delays. Further, there is no evidence present to support that the Becks acted in bad faith in not complying with the trial judge's orders.

¶35. In *Scoggins v. Ellzey Beverages, Inc.,* 743 So. 2d 990, 997 (Miss. 1999), this Court affirmed the trial court's dismissal with prejudice because "Scoggins wilfully submitted false answers to interrogatories and knowingly did not answer deposition questions truthfully." Here, nothing in the record demonstrates that the Becks submitted any false answers.

¶36. This Court in *Wood v. Biloxi Public School District,* 757 So. 2d 190 (Miss. 2000), reversed the trial court's dismissal finding that the case was distinguishable from *Scoggins*. In *Wood*, the "trial court's ruling [to dismiss the case was] based upon a *single* alleged untruthful response in an interrogatory." *Id*. at 191 (emphasis added). This Court reversed the trial judge because it was "not established that Wood knowingly made a false statement and it [was] certainly not established that he submitted a pattern of false responses under the facts here, and apply[ing] our precedent case law, *other more appropriate sanctions should be considered by the lower court*." *Id.* at 191-92 (emphasis added).

16

¶37. In *Ill. Cent. R.R. v. Winters,* 815 So. 2d 1168, 1181 (Miss. 2002), *overruled on other grounds*, **Cooper Tire & Rubber Co. v. McGill**, 890 So. 2d 859, 867 (Miss. 2004), this Court required Illinois Central to pay expenses for violating the trial court's order to compel. This Court held:

> Not until Monday afternoon, the day the depositions were to commence at 9 a.m. in Chicago, did Illinois Central file a motion to reconsider the order. Instead of attempting to comply with the order, Illinois Central clung to its arguments that these executives could not be deposed, or that discovery should not be extended, even though the trial court continued to reject these arguments.

815 So. 2d at 1181. As in the case at hand, *Winters* involved a discovery violation as opposed to false responses discussed in **Scoggins** and **Wood**. In *Winters*, Illinois Central was ordered to pay expenses as the sanction in a factual situation much more severe than the facts in this case which resulted in the ultimate sanction of the Becks' case being dismissed with prejudice.

¶38. For these reasons, the trial judge's dismissal with prejudice of the Becks case was too harsh and a lesser sanction is appropriate. I find that the trial judge abused his discretion. Accordingly, I would reverse the trial judge's judgment and remand the case to the Circuit Court of Harrison County to impose alternative sanctions instead of the dismissal of the Becks' case with prejudice.

**SMITH, C.J., JOINS THIS OPINION.**