962 So.2d 705 (2007)
Christopher T. BLAKE and Robert Blake, Appellants
v.
Richard WILSON, Richard Lawrence, Ronnie Pennington, Sheriff of Rankin County, Mississippi, and Billy Luke, Appellees.
No. 2006-CA-00780-COA.
Court of Appeals of Mississippi.
April 17, 2007.
Rehearing Denied August 21, 2007.
*707 David M. Sessums, Vicksburg, attorney for appellants.
Jacqueline H. Ray, J. Lawson Hester, Jackson, attorneys for appellees.
Before MYERS, P.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. This appeal arises out of a civil suit filed by Christopher Blake and Robert Blake against Richard Wilson, Richard Lawrence, Ronnie Pennington, and Billy Luke.[1] The Blakes' claims are based on an incident involving the Rankin County Sheriff's Department's enforcement of a custody order. After discovery, the Rankin County Circuit Court granted summary judgment on behalf of the officers. Aggrieved, the Blakes appeal and contend that the court erred in extending discovery for the officers, in denying the Blakes' motion for recusal, in permitting a collateral attack on a Mississippi judgment, in granting summary judgment, and in upholding a Virginia custody order.
¶ 2. Finding no error, we affirm the summary judgment.

*708 FACTS
¶ 3. Christopher Blake and Lauren Blake were wed in Rankin County on December 28, 1996. Two children, Skylar and Hayden, were born to them in 1997 and 1999, respectively. Prior to May 2002, Christopher, Lauren, and the children lived in Virginia, where Christopher worked. In May 2002, Christopher returned to Mississippi with the children while Lauren remained in Virginia. In June of 2002, the children returned to Virginia, and in July of the same year, the 31st Judicial District Juvenile and Domestic Relations Court in Virginia granted custody of the children to Lauren.
¶ 4. In October 2002, Lauren and Christopher attempted to reconcile. In early November 2002, Christopher helped Lauren and the children move from Virginia to Mississippi with him. In December 2002, Lauren visited Virginia. Upon her return to Mississippi, Lauren informed Christopher that she wished to return to Virginia. In January 2003, Lauren took the children and moved back to Virginia.
¶ 5. Six months later, in June 2003, Lauren and Christopher met half-way between Virginia and Mississippi, or possibly met in Virginia.[2] At that time, Lauren willingly gave Skylar and Hayden to Christopher. Christopher and the children returned to Mississippi. In August 2003, Lauren came to Mississippi, where she took possession of Skylar, with whom she returned to Virginia. Hayden remained with Christopher; Christopher maintains that Lauren attempted to take both children at that time, but was able to take only Skylar.
¶ 6. On October 20, 2003, Lauren and Christopher both appeared at a temporary custody hearing in Rankin County, Mississippi. Temporary custody was granted to Christopher by the Rankin County Chancery Court. After the temporary order, Christopher went to Virginia to retrieve Skylar. On November 20, 2003, the Rankin County Chancery Court found that it had exclusive jurisdiction over the children and entered an order awarding permanent custody of the children to Christopher.
¶ 7. On June 1, 2004, the Virginia court modified its July 2002 custody order to include the following language: "The Court requests that all law enforcement, including but not limited to the Sheriff Department, Rankin County, Mississippi, assist in the enforcement of this order." Lauren filed the revised order in Mississippi with the Rankin County Chancery Clerk on June 2, 2004. That evening around seven o'clock, Lauren and officers from the Sheriff's Department arrived at the house of Robert Blake, Christopher's father, to enforce the Virginia order. Eventually, Richard Wilson and Richard Lawrence arrived and indicated that they were there on behalf of the Rankin County Sheriff's Department to help enforce the custody order.
¶ 8. Robert refused to grant the officers access to his home, and Christopher requested permission to leave and retrieve his Rankin County custody papers, which he had left at his own house. While Christopher was gone, Robert continued to refuse access to his house, wherein Skylar and Hayden were located, and was subsequently handcuffed and placed in a patrol car. According to Christopher, he returned with his custody papers, but the officers refused to look at them. Eventually, Christopher agreed to let the officers *709 return custody of the children to Lauren, although he requested that he be allowed to go to his house with the children in order to gather some of their belongings. On the way to his house, and once he was at his home, Christopher attempted to contact Judge Thomas Zebert, who had entered the Rankin County custody order. Lauren and the children left for Virginia while Christopher was still in his house.
¶ 9. Christopher eventually reached Judge Zebert, who spoke to Wilson and urged caution. Wilson informed Judge Zebert that custody had already been turned over to Lauren, and that there was nothing more that could be done. Since June 2, Christopher has returned to Virginia to attempt to regain custody of his children, but has not been able to do so. As a result of the incidents related above, the Blakes filed a civil suit against the law enforcement officers involved, alleging a variety of civil claims.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Discovery
¶ 11. In their first contention of error, the Blakes claim that the court erred in allowing the officers to file discovery requests after the expiration of the period of time allowed by Rule 4.04 of the Uniform Rules of Circuit and County Court.[3] Specifically, the Blakes contend that the court was in error because the officers did not file a written motion requesting a discovery extension. The Blakes also object to the officers' drafting of an "Agreed Order" that was forwarded to the Court, but to which the Blakes never agreed. The Blakes' attorney wrote a letter objecting to the agreed order, and the officers maintain that this issue is procedurally barred because the letter, which was not included in the record before us, does not constitute a contemporaneous objection to the entry of a scheduling order.
¶ 12. "Trial courts have considerable discretion in discovery matters, and their decisions will not be overturned unless there is an abuse of discretion." Beck v. Sapet, 937 So.2d 945, 948-49(¶ 6) (Miss. 2006) (citing Robert v. Colson, 729 So.2d 1243, 1245(¶ 11) (Miss.1999)). "A trial court has the authority and indeed a duty to maintain control of [its] docket and ensure the efficient disposal of court business." Venton v. Beckham, 845 So.2d 676, 684(¶ 25) (Miss.2003) (citing Harris v. Fort Worth Steel & Mach. Co., 440 So.2d 294, 296 (Miss.1983)). We further note that the Mississippi Supreme Court has indicated that striking untimely filed responses and affidavits is a drastic measure that should be inflicted in limited circumstances. See Thompson v. Patino, 784 So.2d 220, 223-24(¶ 25) (Miss.2001) (citations omitted).
¶ 13. The officers' request for discovery was filed in early July 2005. The Blakes did not respond to the request until after the court entered its scheduling order which stated that discovery would close on September 30, 2005. The Blakes did not object to this order, although they did not sign the "agreed" order and a letter of protest from their attorney was attached to the proposed agreed order that was sent to and adopted by the court. Although the order clearly stated that it was "agreed," and even mentioned that the *710 parties had conferred and agreed on a trial setting schedule, the court was clearly aware that the Blakes, in fact, had not agreed to the proposed order, as evidenced by the letter of protest that was forwarded to the court by the officers' attorney.[4] Regardless, the court entered the order, which clearly was issued under the authority of the court as the court's order. The fact that the order was labeled as "agreed" is inconsequential.
¶ 14. Trial courts enjoy wide discretion in managing their dockets and conducting discovery; therefore, the court did not err in setting out a schedule for discovery in this case, despite the fact that the officers did not file a written motion requesting an extension of discovery. As recently stated by the Mississippi Supreme Court, "[o]ur trial judges are afforded considerable discretion in managing the pretrial discovery process in their courts, including the entry of scheduling orders setting out various deadlines to assure orderly pre-trial preparation resulting in timely disposition of the cases." City of Jackson v. Presley, 942 So.2d 777, 781(¶ 7) (Miss. 2006) (quoting Bowie v. Montfort Jones Mem'l Hosp., 861 So.2d 1037, 1042(¶ 14) (Miss.2003)). This contention of error is without merit.
2. Motion for Recusal
¶ 15. The Blakes contend that the court erred in denying a motion requesting the recusal of both William Chapman and Samac Richardson, the circuit court judges for Rankin County. The basis of the motion was that Lawrence and Wilson are employed in some official capacity by Rankin County. As contended by the Blakes in their brief, "reasonable persons knowing all of the circumstances and knowing that Richard Wilson and Richard Laurence [sic] were attorneys regularly appearing before the Circuit Court of Rankin County, Mississippi, might question the impartiality of the judges of said Court. . . ."
¶ 16. Recusal is mandated only when "a fair-minded person, knowing all the facts, might reasonably question the judge's impartiality." Boyd v. Tishomingo County Democratic Exec. Comm. & Members, 912 So.2d 124, 133(¶ 21) (Miss.2005) (quoting Upton v. McKenzie, 761 So.2d 167, 172(¶ 16) (Miss.2000)). Canon 3E(1)(b) of the Mississippi Code of Judicial Conduct states that judges "should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances . . . including but not limited to instances where . . . a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter . . . [.]" However, the commentary to the canon states that "[a] lawyer in a governmental agency does not ordinarily have an association with other lawyers employed by that agency within the meaning of Section 3E(1)(b). . . ."
¶ 17. Judge Chapman found the Blakes' motion to be without merit, and also determined that the motion was not timely filed. The Blakes contend that their motion was, in fact, timely because they filed it within thirty days of determining that Lawrence and Wilson acted in an official capacity at the time of the incident. We find that this argument lacks persuasion, as the Blakes' complaint clearly alleged that "Wilson and Lawrence represented to Plaintiffs that they were acting *711 as attorneys and also represented to Plaintiffs that they were acting in their official capacities as Rankin County prosecuting attorneys." Therefore, the court did not err in finding that the motion was properly denied as untimely.
¶ 18. Furthermore, while Lawrence and Wilson are both employed in some capacity by Rankin County, there is no evidence to indicate that they were well-known to either judge. In fact, in declining to recuse, Judge Chapman noted:
Mr. Lawrence and Mr. Wilson don't regularly practice before the circuit court. I don't ever remember Mr. Lawrence appearing before me. It seems to me that Mr. Wilson may have presented an order, I think, one time on an exhumation, but that's the only time I remember. . . . Mr. Lawrence and Mr. Wilson are not personal friends of mine. I've never had lunch with them. I don't know where they live. I've never visited with them in their house[s], they've never visited with me in mine. And I think the only time I've ever seen them outside of the courthouse is right here, right now, Mr. Lawrence. So I just don't believe a person knowing all the circumstances would question my impartiality in that.
Even if the motion had not been properly denied as untimely, Judge Chapman did not abuse his discretion by declining to recuse himself. This contention of error is without merit.
3. Collateral Attack
¶ 19. The Blakes contend that the court's grant of summary judgment acts as a collateral attack on the Rankin County custody order. We find that this contention is without merit, as the Blakes' suit concerns a civil action against various officials. Nothing in the court's grant of summary judgment bolsters or affirms the Virginia custody order, nor does the court's order act as a collateral attack against the Rankin County custody order. The dismissal of the Blakes' civil complaint against the law enforcement officials does not attack, directly or collaterally, the Rankin County Chancery Court judgment.
4. Propriety of Summary Judgment
¶ 20. The Blakes contend that they have produced genuine issues of material fact sufficient to overcome summary judgment. For purposes of clarity, we address separately below the multiple grounds upon which summary judgment was properly granted.
Immunity Under the MTCA
¶ 21. The Mississippi Tort Claims Act (MTCA) governs when various officials, such as the officers, are entitled to immunity against tort claims. A review of the Act reveals that the officers are entitled to summary judgment under multiple provisions of the MTCA.[5]
¶ 22. We note at the outset that the Blakes' complaint is sometimes ambiguous as to whether the individuals named in the complaint are sued in their individual *712 capacity or whether they are sued in their official capacity. However, there is no evidence, and no contention by the Blakes, to indicate that any of the officers acted in a personal capacity. Because the individuals were all acting in their official roles, they cannot be held personally liable for any "acts or omissions occurring within the course and scope of [their] duties." Miss.Code Ann. § 11-46-7(2) (Rev.2002). Therefore, to the degree that the Blakes' complaint can be construed as attempting to sue various individuals in a personal capacity, summary judgment is properly granted to those individuals.[6]
¶ 23. The MTCA grants immunity for acts committed by a governmental entity and its employees that arises "out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature." Miss.Code Ann. § 11-46-9(1)(a) (Rev.2002). The Blakes contend that this section does not grant immunity here because the officers "are neither members of the legislature nor are they members of the judiciary." This interpretation of the statute is incorrect, as the statute does not premise immunity on the employee's actual employment as a member of the judiciary. Instead, the statute grants immunity to governmental employees whose conduct arises out of a judicial action. The situation in this case, which involves a judicial custody order, arises out of a judicial action. The Blakes further contend that this section cannot grant immunity unless the judicial officer in question is employed in Mississippi, but no such limitation exists in the MTCA. Therefore, the officers are entitled to immunity under section 11-46-9(1)(a), and no genuine issue of material fact has been presented to indicate otherwise.
¶ 24. Further, the MTCA grants immunity to governmental employees engaged in "the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c) (Rev.2002). The Blakes contend that this section should not apply to the officers because the enforcement of a custody order is not a police protection matter, or, in the alternative, that the officers acted with reckless disregard for the Blakes' well-being. We note that the MTCA is worded broadly to include any activity "relating" to police protection. Therefore, we find that the enforcement of a custody order would be related to police protection, within the meaning of the MTCA. Furthermore, there is nothing in the record to indicate that the officers acted with reckless disregard for the safety or well-being of the Blakes. There is no doubt that the enforcement of the custody order was an unpleasant task, and that relations between the Blakes and the officers were less than amicable during the course of the incident. However, we find nothing in the record to suggest that the officers acted with "reckless disregard" in enforcing the custody order. Therefore, this section also provides immunity to the officers.
¶ 25. Finally, the MTCA grants immunity to governmental employees who act "[b]ased upon the exercise or performance *713 or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused." Miss.Code Ann. § 11-46-9(1)(d) (Rev.2002). While we find that the officers' actions were primarily dictated by a judicial decree, a review of the record reveals that the officers also acted with discretion and were forced to make choices that involved "social, economical, or political policy alternatives." Miss. Dep't of Mental Health v. Hall, 936 So.2d 917, 925(¶ 19) (Miss.2006) (citing Doe v. State ex rel. Miss. Dep't of Corrs., 859 So.2d 350, 356(¶ 23) (Miss.2003)). Therefore, the officers are also entitled to summary judgment due to discretionary function immunity.
Qualified Immunity
¶ 26. There are two considerations in determining whether qualified immunity exists for an official's actions: whether a plaintiff has suffered a violation of a constitutional right, and whether the defendant acted in an objectively reasonable fashion. Harris v. Miss. Valley State Univ., 873 So.2d 970, 979(¶ 18) (Miss.2004). The constitutional right violated must be clearly established, meaning that "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 980(¶ 19) (quoting Elkins v. McKenzie, 865 So.2d 1065, 1077(¶ 38) (Miss.2003)). A defendant's actions are objectively reasonable "unless all reasonable officials in the defendant's circumstances would have known that their conduct violated the United States Constitution or [a] federal statute. . . . ." Id. (citing Elkins, 865 So.2d at 1077(¶ 38)).
¶ 27. The Blakes contend that the officers cannot succeed under either prong of the test above. Specifically, they argue that it is clear that Christopher's right to custody of his children "was clearly established by not one, but five, orders of the Chancery Court of Rankin County. . . ." Under the circumstance in this case, where the officers were presented with a facially valid Virginia order granting custody of the children to Lauren, we cannot say that the officers violated one of the Blakes' clearly established rights. At the time of the incident, Christopher's custody rights were far from clearly established, despite the presence of contradictory orders from the Rankin County Chancery Court. Therefore, since the Blakes have been unable to meet the first prong of the test, the officers are entitled to qualified immunity. Id. at 979(¶ 18).
¶ 28. Furthermore, even if the Blakes were able to successfully meet the first prong of the test, the officers acted in an objectively reasonable fashion in enforcing the filed custody order. In objecting to the reasonableness of the officers' actions, the Blakes contend that: (1) the officers were on notice because they were aware of the Rankin County Chancery Court file; (2) the officers had been made aware of Christopher's custody of the children both by the Blakes and by Judge Zebert; (3) the officers would not delay their enforcement of the custody order until the following day; (4) the officers refused to call Judge Zebert for guidance on the enforcement of the custody order; (5) the officers denied the Blakes notice; (6) the officers' actions were in violation of various statutory regulations; (7) the officers erred in enforcing the Virginia order; (8) the officers were not obligated to enforce the Virginia custody order; (9) the officers did not follow Judge Zebert's advice after speaking to him on the phone; and (10) the officers did not properly conduct themselves during the enforcement of *714 the custody order.[7]
¶ 29. Much of the above concerns whether the officers were aware of the Rankin County custody decrees. Regardless of whether the officers were aware of Christopher's custody papers, the Virginia custody order was more recent, was valid on its face, and had been properly filed in Rankin County. We cannot say that every official in the same position would believe that his or her conduct violated the Constitution or a federal statute. Therefore, it was objectively reasonable for the officers to enforce the Virginia order. As to the rest of the Blakes' contentions, we also find that the officers' conduct was objectively reasonable. In fact, as we have found, the officers did not violate the Constitution or any statute. Therefore, the officers are entitled to qualified immunity, and summary judgment was properly granted on this ground as well.
Ability to Prove All Elements of Claims
¶ 30. Finally, we note that summary judgment was properly granted on many of the Blakes' claims because they were unable to provide a genuine issue of material fact regarding their entitlement to recovery. For example, the Blakes sued under a theory of false imprisonment due to Robert's confinement and placement in handcuffs. There are two elements to a successful claim for false imprisonment: detention and the "unlawfulness of such detention." Alpha Gulf Coast, Inc. v. Jackson, 801 So.2d 709, 720(¶ 28) (Miss.2001) (citations omitted). Although there is no doubt that Robert was detained, the record is sorely lacking as to evidence of the unlawfulness of that detention. As law enforcement officers attempted to carry out the custody order, Robert refused them entry to his home and argued with them. Eventually, he was placed in handcuffs and detained in a patrol car. He was not arrested, nor charged with any crime, and he was released after the officers gained custody of the children. Under the uncontested facts of this case, Robert's detainment was not unlawful. Therefore, the Blakes have failed to present a genuine issue of material fact concerning their claim for unlawful imprisonment.
¶ 31. The Blakes also claim that the officers' actions amounted to an abuse of process. An abuse of process occurs when a party misuses a legal process with an ulterior motive for doing so, and damage results from the misuse of the process. Ayles v. Allen, 907 So.2d 300, 303(¶ 10) (Miss.2005). Here, there is no evidence in the record that the officers misused a legal process, nor that they had an ulterior motive in enforcing the Virginia order. The Blakes contend that the officers misused the Virginia order, but it is unclear to this Court how the officers misused what appeared to be a valid and binding order that had been filed in the Rankin County courthouse. Regardless of the presence of the Rankin County custody order, the Virginia order was facially valid and had been properly filed in Rankin County. Therefore, from all appearances, the Virginia order was entitled to full faith and credit and enforcement by the officers. Even if the officers were not entitled to immunity on other grounds, summary judgment would be proper as to the Blakes' abuse of process claim.
¶ 32. The Blakes also sued on a theory of intentional infliction of emotional distress. In order to recover, the Blakes must show that "the [defendants'] *715 conduct evokes outrage or revulsion."[8]Gamble v. Dollar Gen. Corp., 852 So.2d 5, 11(¶ 19) (Miss.2003) (citations omitted). Since no genuine issue of material fact has been presented to indicate that the officers' actions were outrageous or evoked revulsion, summary judgment is properly granted as to the Blakes' intentional infliction of emotional distress claim. Furthermore, we find that the Blakes' claims as to negligent infliction of emotional distress were properly dismissed at summary judgment because the Blakes did not provide any genuine issue of material fact regarding the elements of negligence: duty, breach, causation, and harm. See Chisolm v. Miss. Dep't of Transp., 942 So.2d 136, 144(¶ 19) (Miss.2006).
¶ 33. Several of the Blakes' claims are vulnerable to summary judgment because no genuine issue of material fact has been presented regarding the validity of those claims. Furthermore, regardless of whether a genuine issue of material fact exists regarding the specific claims, the officers are clearly entitled to summary judgment on the basis of multiple immunities contained in the MTCA, as well as qualified immunity.
5. Upholding of Virginia Order
¶ 34. As we have already found, the court's grant of summary judgment does not uphold or affirm the validity of the Virginia custody order. Therefore, this final contention is also without merit.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Wilson and Lawrence are both attorneys. Pennington is the Rankin County Sheriff, and Luke is a deputy with Rankin County. In the interest of brevity, we will refer to the Appellees collectively as "the officers."
[2] Filings in the Virginia court that were included in our record indicate that Christopher drove to Virginia, where he picked up the children. However, in the Blakes' brief, Christopher indicates that he and Lauren met half-way between Mississippi and Virginia in order to exchange the children.
[3] Rule 4.04(A) reads in part: "All discovery must be completed within ninety days from service of an answer by the applicable defendant. Additional discovery time may be allowed with leave of court upon written motion setting forth good cause for the extension."
[4] The proposed order and attached letter of protest are not in the record, but were attached to the Blakes' brief. Although we ordinarily do not consider material that appears outside the record, in this case, the officers do not contend that the letter did not exist or was not sent to the court.
[5] The MTCA also grants immunity to any governmental entity or employee who exercises ordinary care and acts "in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid." Miss. Code Ann. § 11-46-9(1)(b) (Rev.2002). The officers urge this Court to find that this provision also shields them from liability in the instant matter, because of their reliance on former Mississippi Code Annotated section 93-23-29, which concerned the filing and enforcement of foreign custody decrees. As we find that other provisions of the MTCA more than adequately cover the officers' immunity from suit, we decline to further address this contention.
[6] There has been no compelling allegation that the officers were not acting in the course and scope of their employment. Having been presented with what appeared to be a facially valid custody order, the officers then went about enforcing that order. Even if this Court were to accept the Blakes' argument that the officers acted unreasonably in relying on the order, there is still no doubt that any errors were committed in the course and scope of the officers' employment.
[7] The Blakes point out that the officers allegedly were friendly with Lauren, that they "bullied" Christopher, that they "forced" their way into Robert's house, and that Robert was placed in handcuffs during the incident.
[8] The Blakes would not be required to show that the officers' conduct evoked outrage or revulsion if they had suffered a physical injury. Gamble, 852 So.2d at 11(¶ 19). However, there is no evidence that either of the Blakes suffered physical injuries as a result of the officers' actions.